## In re ANDREWS.

### PEOPLE ex rel. ANDREWS v. PACKER.

(Supreme Court, Appellate Division, First Department.   June 19, 1908.)

1. INSANE PERSONS—COMMITMENT WITHOUT NOTICE.

Insanity Law, Laws 1896, p. 492, c. 545, § 62, authorizing the commitment of a person as insane without notice to him, provided the judge before whom the application is made dispenses with such notice and states in a certificate his reasons therefor, is not unconstitutional.

2. SAME.

The dispensing with personal notice to the alleged insane person of the application to commit her as insane being, under Insanity Law, Laws 1896, p. 492, c. 545, § 62, addressed to the sound discretion of the judge before whom the application is made, it cannot be said that the reason assigned in his certificate, that, as physicians had made affidavit, such notice would excite and harm her, was insufficient to confer jurisdiction on him to dispense with the notice.

3. SAME—PROCEEDINGS FOR REMOVAL FROM SANITARIUM.

Where, in the matter of an incompetent person, there is a decision on conflicting evidence adverse to its being for her best interest to be removed from the sanitarium to which she was committed, and in a controversy between her husband, who is the committee of her person, and her other relatives, it was decided that she should be left in such sanitarium, not only till its further order, but till its further order on notice to her sister and her brother-in-law and to the special guardian appointed for her in a proceeding still pending for removal of her husband as such committee on charges involving his fitness for such position, such orders should not be ignored or modified without notice to the parties so decided entitled to notice; but further proceedings by such committee to obtain custody of the incompetent, on the ground that, though she had not fully recovered her sanity, she had so far recovered as to render it safe and advisable to remove her, should be in the form of a notice to modify such orders on notice to the parties thereby entitled to notice.

4. SAME—PENDENCY OF PROCEEDING TO REMOVE COMMITTEE.

If, pending proceedings for removal of the committee of the person of an incompetent person on charges involving his fitness for the position and his immorality, she sufficiently recovers to render it advisable that she be released from the sanitarium to which she has been committed, other provision for her custody than returning to her home in his charge should be made till termination of the proceeding for his removal.

Scott and Ingraham, JJ., dissenting.

Appeal from Special Term.

In the matter of Blanche L. Andrews, an incompetent person.  Habeas corpus proceedings, on the relation of Constant A. Andrews, against Flavius Packer.  From an order denying the prayer of relator's petition and dismissing a writ of habeas corpus granted thereon, he appeals.  Affirmed.

See 109 N. Y. Supp. 831, 57 Misc. Rep. 88.  See, also, 108 N. Y. Supp. 915.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

William M. Seabury, for appellant.

George C. Austin, for respondent.

LAUGHLIN, J. The petitioner is the husband and committee of the person of Blanche L. Andrews, who on the 13th day of March, 1907, pursuant to the provisions of the insanity law (chapter 545, p. 470, Laws 1896), was committed by a justice of the Supreme Court to "The Knolls," a private sanitarium situate at 261st street and Broadway, city, county, and state of New York, conducted by the respondent, Flavius Packer, upon whom the writ was served. A copy of the commitment and the proceedings upon which it was based was annexed to the petition. The validity of the commitment was not attacked by the petition, which merely charged that the incompetent person had so far recovered that her confinement in the sanitarium was no longer necessary, and that she should be either discharged or paroled from the sanitarium pursuant to the provisions of section 74 of the insanity law. Annexed to the petition was an affidavit of a specialist in the treatment of mental diseases showing that he visited the incompetent at the sanitarium on the 2d and 9th days of February, 1908, and, after setting forth briefly the condition in which he found her, he recommended that she be taken to her home "upon the customary 30 days' parole for a test of her ability to remain there, and to continue in the tranquil and well-conducted condition in which she is at the present time"; that she be put under the medical care and general direction of the physician under whose care she had been, but that she remain as a committed patient of "The Knolls"; and that the customary report of her condition be made to Dr. Packer. The return of Dr. Packer does not controvert the allegations of the moving papers; but, in addition to setting forth the commitment under the insanity law, it sets forth an order of the Special Term of the Supreme Court made in this proceeding on motion of Nannie V. Roosevelt, a sister of the incompetent, on notice to and after hearing the petitioner, which modified a prior order of the Special Term with respect to the custody and visitation of the incompetent, made on the 18th day of December, 1906, by permitting the sister of the incompetent to visit her at certain times and directing that the petitioner be excluded from the room on such occasions, and enjoining him from interfering with or interrupting such visits, and directing that the then abode of the incompetent at Dr. Packer's said sanitarium "shall not be changed without first giving notice in writing to John E. Roosevelt, Nannie V. Roosevelt, and C. J. Sullivan, special guardian, and without further order of this court," and a certain other order of the Special Term of the Supreme Court made on the 23d day of November, 1907, on a motion to confirm the report of a referee to whom an order of reference had been granted on application of the committee of the person of the incompetent for an order directing the committee of the estate to reimburse him for certain expenditures and fixing a monthly allowance to be thereafter paid to him for the care of the incompetent, and to confirm the report of the same referee concerning the judicial settlement of the accounts of the committee of the estate of the incompetent made on the application of the other two members of the committee. The return also makes the opinion delivered at Special Term in granting

said order of November 23, 1907, part of the return. It appears by the order of November 23, 1907, that the court denied a motion made by the husband of the incompetent as committee of her person, on notice to Mr. and Mrs. Roosevelt and to the special guardian, to modify said order of April 8, 1907, so as to permit him to select such residence for the incompetent as he or the court might deem suit- able without notice to Mr. and Mrs. Roosevelt or to the special guard- ian. The application for this order was also referred and the ref- eree reported in favor thereof, but the court, on the return of the motion to confirm the report of the referee, appointed two alienists to examine the incompetent, and to report as to whether her removal to her residence, No. 737 Madison avenue, during all or any por- tion of the year, would be beneficial to her, and whether her mental malady was incurable, and to advise with respect to the reception by the incompetent of her husband, relatives, and friends as visitors. The alienists reported that her malady was probably incurable, but that the chances of recovery would be promoted by her retention in an institution similar to the one in which she then was, and that vis- its to her should be regulated by the physicians in charge. There has been no appeal by the petitioner for the writ of habeas corpus from either of those orders, and, so far as material to this applica- tion, they still stand in full force and effect. It also appears by said order of November 23, 1907, that on the 15th day of November, 1906, Nannie V. Roosevelt, the sister and only heir at law of the incom- petent, presented a duly verified petition for the removal of Andrews as committee of the person of the incompetent, containing allegations tending to show that he had not properly performed his trust, and that he was an improper person to be the committee of his wife, and that an order of reference was granted on this application which was pending before the referee. By said order of November 23, 1907, the court attempted to vacate the order and to deny the application for the removal of the committee of the person, but, on appeal from that order, this court reversed the order in this regard and directed that the reference proceed. In re Andrews (First Dept., April 10, 1908) 109 N. Y. Supp. 831. With respect to the charges against the husband as committee of his wife and the order in regard thereto, this court said that the allegations, "if established, would justify, if they would not require, his removal as the committee of the person," and "the court should not have summarily vacated the order of ref- erence and denied the motion for the removal of Andrews as com- mittee of the person of the incompetent. The charges are sufficient- ly grave to require investigation."

. The relator traversed the return, alleging that the commitment under the insanity law to "The Knolls" was void, for the reason that it was made without notice to the alleged incompetent, which point, as already observed, he did not take in his moving papers; that her confinement is further illegal because she is no longer insane, and because the provisions of section 62 of the insanity law, under which the proceedings were had, are unconstitutional and void, and it de-

nied the making of the said orders of the Special Term of April 8, 1907, and of November 23, 1907, and the delivery of an opinion by the justice presiding in making the last order. Upon the hearing on the writ, return, and traverse thereto, the relator presented the affidavits of three alienists, tending to show that the incompetent had so far recovered that it was advisable that she be taken from the sanitarium to her home and placed in charge of a nurse. The court thereupon appointed the two alienists to examine the patient, who had previously examined her on the 3d and 10th days of September, 1907, and report her condition. They reported a joint affidavit, verified on the 16th day of April, 1908, showing that she was still insane and suffering from dementia, and that, although her condition had improved, in their opinion any change would be injurious, as had previously been experienced when she was brought from Bloomingdale Asylum to her home, as appears by one of the affidavits read in behalf of the relator. It appears that Blanche L. Andrews was committed to Bloomingdale Asylum, under the insanity law, as an insane person, on the 15th day of October, 1903, but that in the month of October, 1905, she was permitted to be taken to her home in charge of nurses connected with the asylum. In February, 1907, her condition had so changed for the worse that it became advisable and necessary to have her again committed as an insane person, and at that time she was sent to the sanitarium from which the relator now seeks her discharge.

The contention that section 62 of the insanity law which authorizes the commitment without notice to the alleged incompetent person provided the judge before whom the application is made dispenses with such notice and states in a certificate to be attached to the certificate his reason (see 1 Laws 1896, p. 493) therefor is unconstitutional does not require special consideration, for the point has been authoritatively decided adversely to such contention. Matter of Clark, 57 App. Div. 5, 67 N. Y. Supp. 631; Sporza v. German Savings Bank, 192 N. Y. 9, 84 N. E. 406. The facts upon which the justice dispensed with the service of notice are meager. It merely appears by the affidavits of the physicians that service of such notice "would excite and harm her," and that reason is assigned in the certificate of the justice. The propriety of dispensing with personal service of notice on these facts was addressed to the sound discretion of the justice. It cannot be said that the facts were insufficient to confer jurisdiction to dispense with such service. The petition for the commitment was presented by her husband who was then the committee of her person. It is quite likely that the learned justice was influenced by the fact that she had been previously duly adjudged insane and committed to Bloomingdale Asylum and that she was an insane person; the custody of her property and of her person being then vested in committees appointed by the court. The conduct of the committee of the person of the incompetent is now urging that the commitment which was issued on his application and upon which he procured the incarceration of his wife in the sanitarium is void is open to just criticism. Section 73 of the insanity law provides as follows:

"Any one in custody as an insane person is entitled to a writ of habeas corpus, upon a proper application made by him or some friend in his behalf. Upon the return of such writ, the fact of his insanity shall be inquired into and determined. The medical history of the patient as it appears in the case book, shall be given in evidence, and the superintendent or medical officer in charge of the institution wherein such person is held in custody, and any proper person, shall be sworn touching the mental condition of such person."

In addition to the remedy for a discharge on writ of habeas corpus in case the detention is without lawful process, the Legislature by this section expressly extended the writ of habeas corpus to cases of lawful commitments of persons as insane who have subsequently, while held under such lawful commitments, recovered their reason. The relator did not show that his ward had become sane, and therefore he was not entitled to have her discharged under this section of the insanity law on a writ of habeas corpus, which was only intended to apply to cases where the incompetent person has become sane. Doubtless the committee of the person who is ordinarily entitled to the custody of his ward might, were it not for the orders' of the court, procure a writ of habeas corpus to obtain her custody, even though she be not fully restored to reason, in a case where she has been discharged or paroled, as prescribed in section 74 of the insanity law, but is still held in custody, and perhaps to obtain her custody from any institution on clearly showing that she has so far recovered as to render it safe and advisable to remove her from the custody of the institution. In the case at bar, however, we have an adverse decision of the Special Term on conflicting evidence as to whether it is for the best interest of the incompetent person to be removed from the sanitarium. Moreover, it appears that the Special Term in a controversy arising between the husband, who is the committee of the incompetent, and her other relatives, decided that she should be left in this sanitarium, not only until the further order of the court, but until the further order of the court on notice to her sister and her brother-in-law, and to the special guardian appointed for her in the proceeding now pending in the Supreme Court for the removal of the relator as the committee of her person on charges involving his fitness to hold that position and involving charges of immorality on his part in his own house, while she was an inmate thereof, being the same house to which he now desires to remove her. It appearing that these orders remain in full force, the court could not with propriety have ignored them, nor should it have modified them without notice to the parties whom the Special Term previously decided were entitled to notice: The application, in so far as it was not based upon the claim that the alleged incompetent has recovered her sanity and that the commitment was void, should have been in the form of a notice of motion to modify these orders on notice to the parties thereby entitled to notice. If the incompetent person sufficiently recovers to render it advisable that she be released from the sanitarium, other provision should be made for her comfort and welfare than returning her to her home in charge of her husband, until after the termination of the proceeding for his removal as committee of her person.

It follows that the order should be affirmed; but, as there was none but a formal appearance for the respondent, without costs.

CLARKE and HOUGHTON, JJ., concur.

SCOTT, J. (dissenting). The petitioner is the committee of the person of his wife, Blanche L. Andrews, an incompetent, having been appointed on October 29, 1903. On March 13, 1907, upon the petition of the present petitioner, the said incompetent was committed to a private sanitarium known as "The Knolls," at Riverdale, N. Y. On April 8, 1907, on motion of Nannie V. Roosevelt, a sister of the incompetent, an order was made regulating the times at which Mrs. Roosevelt might visit her sister. The order also provided that the present abode of the incompetent at "The Knolls" should not be changed without first giving notice in writing to John E. Roosevelt, Nannie V. Roosevelt, and C. J. Sullivan, special guardian, and without further order of the court. By section 2320 of the Code of Civil Procedure the Supreme Court is vested with the care and custody of the persons and estates of incompetent persons, such jurisdiction to be exercised by committees of the person and of the estate to be appointed by the court. Section 2322. The committee of the person therefore stands as the representative of the court, and, of course, is subject to its control and directions. The mere fact that a person has been appointed the committee of the person of an incompetent implies that the person so appointed enjoys the confidence of the court, and any suggestion or recommendation made by him is entitled to great weight. Especially is this so when the committee, having the ability to properly care for the incompetent, desires to assume the personal charge of such incompetent, and to relieve him or her from involuntary detention in an asylum. In the present case all the evidence is to the effect that the incompetent has a well-appointed home and an ample income to insure her proper care in that home.

The great weight of the evidence is that she has so far recovered her mental poise that it will not be unsafe or detrimental to her if she be permitted to return to her home under proper regulations as to attendance and medical care. In my opinion the application of the petitioner should be granted, and the incompetent should be provisionally released from the sanitarium to which she stands committed and remitted to the personal charge of the committee of her person. The fact that some one has made charges against the committee, which lack substantiation, should not operate to the disadvantage of the incompetent, and extend her restraint in an asylum longer than her condition demands. So long as the committee remains undischarged, he should be presumed to be fit to have the care of the incompetent. If he is shown to be unfit, another committee should be appointed, but in the meantime the incompetent should be allowed to return to her home, with such provisions for her care and comfort as due care for her interests requires. I am of opinion that the order should be reversed and the incompetent restored to the custody of the committee of her person, the order to be settled on notice to her sister and her special guardian.

INGRAHAM, J., concurs.