## 11512

### *EX PARTE* BOYLE
### CITY OF SUMTER v. BOYLE

#### (123 S. E., 9)

1. HABEAS CORPUS—ISSUE OF FACT NOT DETERMINED.—An issue of fact cannot be determined upon a writ of *habeas corpus*.

2. FOOD—CITY MAY IMPOSE CONDITIONS ON OPERATION OF ABATTOIR OUTSIDE OF CITY LIMITS.—A city has power to pass an ordinance not only requiring inspection of meat but imposing conditions on operation of abattoir outside of city limits, in which meat intended for sale within city is prepared.

3. MUNICIPAL CORPORATIONS—POWERS CONFINED TO TERRITORIAL LIMITS. —In absence of a statute, powers of a municipality are confined to its territorial limits.

4. FOOD—ORDINANCE IMPOSING REASONABLE PRECAUTION SUSTAINED.— An ordinance imposing a reasonable precaution as to sale of meats, appropriate to end in view, will be sustained against the objection of unconstitutionality.

Petition in habeas corpus in the original jurisdiction of the Supreme Court by W. C. Boyle in the matter of City of Sumter against W. C. Boyle. Petition dismissed.

*Messrs. Purdy & Bland,* for petitioner, cite: *When ordinance may be declared invalid for unreasonableness:* 156 U. S., 49; 76 S. C., 129.

*Messrs. Epps & Levy* and *Harby, Nash & Hodges,* for respondent, cite: *Court will not go into reasonableness of the action of the Board of Health in a habeas corpus proceedings:* 45 S. C., 537. *Ordinance passed for protection of public health will be upheld if reasonably appropriate to the end in view:* 83 S. C., 372; 119 S. E., 241. *Power to permit left in hands of local authorities is constitutional:* 92 S. C., 374. *Court will not substitute its judgment for that of local authorities:* 93 S. C., 553; 83 S. C., 372; 92 S. C., 374.

May 13, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

*Habeas corpus* proceedings in the original jurisdiction of this Court for the purpose of testing the validity of an ordinance of the City of Sumter, hereinafter more particularly described, for a violation of which the defendant was arrested.

On April 24, 1923, the City of Sumter passed an ordinance entitled:

"An ordinance to regulate the sale of meat and meat products for feed within the City of Sumter and to prescribe the conditions under which animals from which such meat is obtained shall be slaughtered and butchered."

Section 1 provides for the inspection of all meat intended for sale, the stamping of that which shall be found fit for food, and the destruction of that which shall not be so found. Section 2 prohibits the sale of the meat of animals not slaughtered in the abattoir operated by the city. Three classes of meat are excepted from the prohibitions of this section: (1) That which has been cured, smoked, or canned; (2) that from animals slaughtered under proper condition with reference to the health and safety of the citizens of Sumter. The company had done all in its power to secure the approval of the city board of health, without

avail.   The defendant admits the charge of selling meat which had not been inspected by the city board, and that the animal had been slaughtered in an abattoir which had not been approved by said board as required by the ordinance; that to comply with the requirements of the city ordinance and of the board of health, making the plant conform to the plant of the city and the rules and regulations in relation thereto, would cost the company about $40,000.   The ordinance is attacked upon the ground that it is unreasonable, unconstitutional, null and void, in that it places upon the company's business the performance of unnecessary and prohibitive requirements and unreasonable and unnecessary and excessive expenses, unlawful, prohibitive, and confiscatory in their nature, and thus deprives the company of its property without due process of law, in violation of the Federal and State Constitutions.

It will be observed that the defendant not only attacks the constitutionality of the ordinance upon the grounds just stated, but he complains that the city is imposing certain conditions not warranted by the ordinance; that the approval was refused upon the ground that the abattoir was too small, would either have to be torn down and built over, or he would have to go to another place and build another plant substantially the same as that built by the city, which would cost the company about $40,000.   This allegation was specifically denied by the city in its return.   The affidavit of the health officer states:

"I never at any time told him, nor do I know of any member of the board of health ever telling him, that the trouble with his plant was that it was too small, and that in order to secure our approval he would have to build a plant as large as the city's plant or in exact pursuit of its plans and specifications.   I know of nothing which transpired which could reasonably have given Mr. Boyle the impression that either the board or myself was assuming the position that his plant was sufficient in every respect except size

and complete similarity of construction to the city's plant, and that we had no other reason for the withholding of our approval. He was, however, given to understand that his plant would have substantially to conform to the standards set by the city ordinance and existing at the city plant with regard to matters which might affect the public health."

The ordinance does not require that an abattoir operated by individuals, shall be substantially the same as that installed by the city, but that "it shall be conducted under and subject to rules and regulations substantially similar to those contained in the ordinance." If the city, under color of this ordinance, was endeavoring to enforce such a condition, not warranted by the ordinance, and refused to approve the plant of the defendant's company upon that ground alone, the defendant would be entitled to discharge under the writ; but this fact, as has been seen, is denied by the city; on the contrary, it is alleged that the cause of its refusal to approve the plant was that it was not being conducted as the ordinance required. This presented an issue of fact, which could not be determined upon writ of *habeas corpus.*

If that were all in the case, the petition would necessarily have to be dismissed. But it is contended by the petition: (1) That the city council had no power to pass the ordinance in question; and (2) that the ordinance upon its face is unconstitutional.

As to the first ground of attack: This ordinance is one of most unusual character; its parallel has not been found among the decisions of the Courts of this county. The right and power of the city to require the inspection of meats cannot be denied. *Lieberman v. Van De Carr,* 199 U. S., 552; 26 Sup. Ct., 144; 50 L. Ed., 305, where the subject is elaborately and clearly discussed. The defendant, however, had not been prosecuted for selling meat which had not been inspected according to municipal regulation, but for selling meat of animals which had not been slaughtered in the city

abattoir, or in an abattoir outside of the city limits which had been approved by the city health department. The question, therefore, is: Has the city the power to pass an ordinance which not only requires the inspection of meat, but imposes conditions upon the operation of an abattoir outside of the city limits in which the meat intended for sale within the city is prepared.

If the question turned upon the power of the city council to regulate the installation and operation of a plant outside the city limits, it would have to be decided in the negative, for the powers of a municipality, in the absence of a statute, are confined to its territorial limits. But such is not the question which is presented. The ordinance purports to deal only with acts committed within the city limits. It does not propose to regulate the conduct of the company's operations. The company may, so far as the city is concerned, operate its plant as it may choose, and dispose of its product wherever it may find a market, except that it may not find a market among the citizens of Sumter, unless it furnish at least a partial guaranty of the wholesomeness of its meats by operating its plant under rules and regulations substantially similar to those under which the city's plant is operated.

I see no reason why a city could not prohibit the introduction of milk from a dairy outside its limits, operated under unsanitary conditions, without screens, in filth, without proper inspection for tuberculosis, Texas fever, or other disease, even though it may have provided for due inspection of the milk, or why a city could not prohibit the introduction of water from a contaminated watershed or one not inspected, as additional safeguards. The avenues of disease are so subtle and varied, the detection is so difficult, that methods of insurance against its introduction, although cumulative, should not be discouraged. The matter of wholesome food is one of such paramount importance to the community that it is entitled to every reasonable safe-

guard to insure it; and to say the least of it, the provision is an additional safeguard. An inspection may not discover the hidden dangers, but they are less likely to exist when the plant is being operated under regulations substantially similar to those enforced in the city's plant by the authorities charged with the duty of guarding the health of its citizens.

In 2 Dillon, Mun. Corp. (5th Ed.) § 677, it is said:

"In determining the validity of ordinances adopted to promote the health and comfort of the inhabitants, it may be taken as firmly established that the state possesses, and therefore municipal corporations under legislative sanction may exercise, the power to prescribe such regulations as may be reasonably necessary and appropriate for the protection of public health and comfort, and that no person has an absolute right to be at all times and in all circumstances freed from restraint; but persons and property are subject to all reasonable kinds of restraint and burdens in order to secure the general comfort, health, and prosperity of the State, the public as represented by its constituted authorities taking care always that no regulation, although adopted for those ends, shall violate rights secured by the fundamental law nor interfere with the enjoyment of individual rights beyond the necessities of the case. It is equally settled that if a regulation, enacted by competent public authority avowedly for the protection of the public health, has a real, substantial relation to that object, the Courts will not strike it down upon grounds merely of public policy or expediency."

As to the second ground of attack: The objection to the constitutionality of the ordinance is met by the foregoing observations as to the power to pass it. If it is a reasonable precaution, reasonably appropriate to the end in view, the ordinance will be sustained. *Kirk v. Board,* 83 S. C., 372; 65 S. E., 387; 23 L. R. A. (N. S.), 1188. Upon its face, therefore, the ordinance is a valid exercise of the police power of the city. Notwithstanding

this, the trial Court has the power to inquire into the manner of its administration, and if that should be found violative of the constitutional rights of the defendant, or enforced in an arbitrary, oppressive, discriminatory manner, or upon conditions not warranted by the ordinance, matters dependent upon issues of fact, not cognizable under a proceeding of this nature, the Court will interfere.

The petition is dismissed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.