[Civil No. 2842. Filed January 20, 1930.]

[284 Pac. 149.]

CHRIS CHRISTIANSEN, Appellant, v. ED WESTON, J. W. SULLIVAN, GEORGE C. RUFFNER, R. N. LOONEY, J. H. ALLEN, and also LESTER RUFFNER, R. N. LOONEY, H. R. WOOD and ED SHUMATE, as Sureties of Said GEORGE C. RUFFNER, Appellees.

Mr. J. Gardner Scott, for Appellant.

Messrs. O'Sullivan & Morgan, Messrs. Norris, Flynn & Patterson, Messrs. Anderson & Gale and Messrs. Sloan, Holton, McKesson & Scott, for Appellees.

LOCKWOOD, C. J.—Chris Christiansen, hereinafter called plaintiff, brought suit against Ed Weston, J. W. Sullivan, George C. Ruffner, R. N. Looney and J. H. Allen, hereinafter called defendants, as joint tort-feasors, and against Lester Ruffner, R. N. Looney, H. R. Wood and Ed Shumate, as sureties of said George C. Ruffner on his official bond as sheriff of Yavapai county. Two causes of action were set up in the complaint. The court sustained a general demurrer as to the second, and the case was tried to a jury on the first one. After plaintiff had submitted his evidence, the court directed a verdict for the defendants, and entered jugment thereon, and from said judgment this appeal has been taken.

There are some five assignments of error, which we will consider in their order. The first is that the court erred in sustaining the demurrer to plaintiff's second cause of action. The complaint is quite lengthy, and we consider it unnecessary to set it up in full. On a careful examination of the first cause of action, it appears to us that it alleges a conspiracy between the defendants to injure plaintiff in his good name and reputation, and that in furtherance of said conspiracy they caused him to be imprisoned without any authority of law. The second cause of action in substance alleges that defendants also caused to be published certain libelous matter in regard to

plaintiff's imprisonment. The first cause of action sets up the tort of false imprisonment, and the injury is essentially one to the person. The second cause of action is for libel, and the injury in such cases is to the character. *De Wolfe* v. *Abraham,* 151 N. Y. 186, 45 N. E. 455; *Green* v. *Davies,* 182 N. Y. 499, 3 Ann. Cas. 310, 75 N. E. 536; 1 C. J. 1079.

Paragraph 427, Revised Statutes of Arizona (Civil Code) 1913, as amended by chapter 34, Session Laws of 1921, reads as follows:

"Paragraph 427. Only such causes of action may be joined as are capable of the same character of relief. Actions *ex contractu* shall not be joined with actions *ex delicto.* In actions *ex delicto* there shall not be joined actions to recover for injuries to the person, to property, or to character; but they shall be sued for separately; provided, that causes of action for injuries to person and injuries to property, growing out of the same tort, may be joined in the same complaint, and provided such causes of action shall be separately stated."

It is obvious that the two causes of action set forth in the complaint—one being for injury of the person, and the other for injury of the character—were improperly joined, and the court correctly sustained the demurrer.

The second assignment of error is that the court erred in denying plaintiff's motion to strike certain portions of the answer of defendants Weston and Sullivan. We have examined carefully the answer to which objections were made, and the motions to strike, and, without going into details, are of the opinion that the portions of the answer which plaintiff endeavored to have stricken were proper and, indeed, essential. The court did not err in its action on the motions to strike.

The third assignment of error is that the court should not have sustained defendants' objection to the admission in evidence of Plaintiff's Exhibit "A."

This exhibit is a duly authenticated copy of certain records and orders made by this court and the superior court of Maricopa county in a *habeas corpus* proceeding, brought by plaintiff in this court, which was by us sent to the superior court of Maricopa county for decision. A proper understanding of this assignment requires some discussion of the facts of the case. It appears from the record that plaintiff was taken into custody by defendant Ruffner, as sheriff of Yavapai county, without warrant or order of court; and shortly after his detention a complaint was filed against him in the superior court of Yavapai county, alleging that he was insane. Various proceedings were had in said court on such complaint, and an order was made committing plaintiff to the State Asylum for the Insane, in Phoenix. Plaintiff, through his attorney, immediately applied to this court for a writ of *habeas corpus,* setting up his arrest and detention, and various circumstances which he alleged had occurred in connection therewith; and the writ was by us issued and made returnable before the superior court of Maricopa county. The sheriff made return that he held plaintiff by virtue of certain orders and a commitment made by the superior court of Yavapai county, and on hearing the following order was made:

"In re the Application of Chris Christiansen for a Writ of Habeas Corpus.

"Comes now the defendant, represented by his counsel, J. Gardner Scott, and thereupon it is ordered by the court allowing the writ and discharging the prisoner."

This exhibit was offered in evidence upon the theory, as we understand plaintiff's position, that it was *res adjudicata* as to the illegal imprisonment of plaintiff. An order or judgment discharging a person in *habeas corpus* proceedings is conclusive in his favor that he is at the time illegally held in custody,

and is *res adjudicata* as to all issues of law and fact necessarily involved in that result. *United States* v. *Chung Shee,* (D. C.) 71 Fed. 277; *McConologue's Case,* 107 Mass. 154; *In re Crow,* 60 Wis. 349, 19 N. W. 713. It is not, however, *res adjudicata* as to matters involved in later litigation, unless those issues were necessarily involved in the conclusion that petitioner was *at the time of his discharge* illegally detained. *State* v. *Sievers,* 102 Neb. 611, 168 N. W. 99; *Collins* v. *Loisel,* 262 U. S. 426, 67 L. Ed. 1062, 43 Sup. Ct. Rep. 618.

Under our statute, there are some seven grounds set forth under which a prisoner may be discharged upon a writ of *habeas corpus.* Among them is the following: ''(2) When the imprisonment was at first lawful, yet by some act, omission or event, which has taken place afterwards, the party has become entitled to be discharged.'' Section 1359, Pen. Code 1913. The writ is frequently used in cases where a person has been committed for insanity, and even though the petitioner was legally committed in the first place, yet if, on the hearing of the writ, it appears that at such time he is sane, he will be discharged. *In re Clary,* 149 Cal. 732, 87 Pac. 580; *Ex parte Linke,* 35 Okl. 192, 128 Pac. 702; *Ex parte Brown,* 39 Wash. 160, 109 Am. St. Rep. 868, 4 Ann. Cas. 488, 4 L. R. A. (N. S.) 540, 81 Pac. 552; 29 C. J. 105.

Since the record in the proceeding in *habeas corpus* did not show the ground upon which the petitioner was discharged, it would in no way be *res adjudicata* as to the illegality of the original imprisonment. The most which it could have shown, material to the issues in this case, was the detention of plaintiff by the sheriff, and that defendants Looney and Allen were the examining physicians at the time he was ordered committed to the State Hospital by the superior court of Yavapai county. These matters, however, were not disputed, but were expressly ad-

mitted by defendants Ruffner, Looney and Allen; hence we are of the opinion there was no prejudicial error in the refusal of the court to admit Plaintiff's Exhibit "A."

The fourth and fifth assignments of error in substance are that the evidence did not justify the court in directing the jury to return a verdict in favor of defendants. The defendants may, for the purpose of discussing this question, be divided into four classes: First, Weston and Sullivan, who, it is alleged, conspired with others to cause plaintiff's imprisonment; second, George C. Ruffner, the sheriff, who, as a matter of fact, actually did imprison him; third, defendants Looney and Allen, who, the record shows, were the examining physicians at the lunacy inquest before the superior court of Yavapai county; and, fourth, defendants Ruffner, Looney, Wood and Shumate, as sureties on the sheriff's bond.

First, as to defendants Weston and Sullivan, there is not a scintilla of evidence to the effect that they had any part in causing plaintiff's imprisonment. Since the gist of the action was the alleged false imprisonment, the court properly instructed a verdict in their favor. So far as Looney and Allen were concerned, their sole connection with the case was that they were called in pursuance of the statute to examine plaintiff and to report to the court their best judgment as to his mental condition. There is no evidence that they had any other interest in the case, or were not honest in their opinions, or that they did not bring to the matter the usual professional skill and learning; and, such being the fact, even though they were mistaken in their judgment as to plaintiff's condition, they are in no way responsible in an action of any nature arising out of such imprisonment. *Williams* v. *Le Bar,* 141 Pa. 149, 21 Atl. 525; *Warner* v. *Packer,* 139 App. Div. 207, 123 N. Y. Supp. 725.

The responsibility of the sureties, of course, is determined by that of the sheriff. In the case of the latter, the evidence shows that he had been informed. by several parties that plaintiff was acting queerly; that, following such information, he himself called upon plaintiff, and from his conversation came to the: conclusion that the latter was insane, and that it was. dangerous to leave him at large; but that plaintiff. did not at any time do anything to justify such belief, except to insist that certain parties had tried to poison him; that he (Ruffner) thought he would be. blamed for it, if he left plaintiff at large and the lat-. ter did any harm; and for that reason he arrested. plaintiff, and thereafter made complaint according to statute, and notified the court as to the facts.

Probably the leading case on the right of an officer to arrest a person for insanity, without first having made complaint and secured a warrant, is that of: *Witte* v. *Haben*, 131 Minn. 71, Ann. Cas. 1917D 534, L. R. A. 1916C 228, 154 N. W. 662, 663. Therein the facts were that defendant was a police officer, that he was advised by several persons of certain strange acts. of plaintiff; and that he had reason to believe, and did believe, the latter was mentally deranged; that he arrested the plaintiff without a warrant, and that a physician was immediately called to make an examination of plaintiff, upon whose advice the latter was held until the next day. The court, in passing upon the matter, said:

"There is force in the position that it is a harsh rule to hold a police officer for false imprisonment when the conduct of the one imprisoned has been such that the ordinarily prudent officer upon the information obtained would come to the conclusion that he was insane and ought to be detained. But, on the other hand, it is readily seen to what oppression and harm a rule would lend itself under which a citizen may be deprived of his liberty without right and without redress because, at some time or other, he

has exhibited certain peculiarities or abnormal traits which, through malice or otherwise, come to the ears of an officer who, in good faith, arrests upon the report. As said by the court in *Wahl* v. *Walton*, 30 Minn. 506, 16 N. W. 397: 'The power to arrest without warrant, while it may in some cases be useful to the public, is dangerous to the citizen, for it may be perverted to purposes of private malice or revenge, and it ought not, therefore, to be enlarged.' The mere fact that one has been arrested on the charge of insanity may be sufficient, as it was in this case, to give a reputation that will exclude the one concerned from earning a livelihood in positions of responsibility. But, above all, the law does not permit even an officer to restrain or imprison a person without a warrant, except for a public offense committed or attempted in the officer's presence, or when a person has committed a felony, or when a felony has been committed and the officer has reasonable cause for believing the person arrested the perpetrator, or upon a charge made upon reasonable cause of the commission of a felony by the person arrested. . . . The record is barren of any testimony tending to show that plaintiff had ever attempted any crime, or had by word or deed disturbed any person, or had at any time been a menace to himself or others. On the day he was arrested he quietly walked to the depot and boarded the train under the observation of defendant, and the only peculiarity defendant noticed was that plaintiff looked around more than men ordinarily do. Under this situation no defense or justification for the arrest could exist. It was unlawful, and entitled plaintiff to damages. The court in the charge given took the right view. And an attentive examination of the evidence fails to make out justification for the arrest, even were the rule such as the learned trial court now deems it should be. But, as indicated, under our statutes and, we believe, under the common law, the rule is that in an action against an officer for false arrest and imprisonment the officer cannot justify upon the ground that he made the arrest upon reliable information that the person arrested was insane; that he fully believed this to be a fact, and as a reasonably prudent officer

was justified in so believing. If he without a warrant arrests a person on the ground and belief that such person is insane, proof of insanity is the only defense in a suit for unlawful imprisonment, where there is no claim that any disturbance or impending danger necessitated the arrest. But even in cases of insanity arrest without legal warrant is not always justifiable. 'An insane person may be arrested and detained without legal process only when it is reasonably necessary,' *Keleher* v. *Putnam,* 60 N. H. 30, 49 Am. Rep. 304; and the court held that a state of mild insanity did not make it reasonably necessary, Addison on Torts (8th Ed.) p. 184; Cooley on Torts (3d Ed.) vol. 1, p. 310 et seq.; *Look* v. *Dean,* 108 Mass. 116, 11 Am. Rep. 323; and *Colby* v. *Jackson,* 12 N. H. 526.''

If, however, it appears that a person is dangerously insane, so that he is an immediate menace to himself or others, if allowed to be at large, it is then permissible for any person—whether an officer or not—to arrest the insane person without process, and detain him until proper process can issue. *Colby* v. *Jackson,* 12 N. H. 526; *Bisgaard* v. *Duvall,* 169 Iowa 711, 151 N. W. 1051.

We hold, therefore, that where an officer arrests a person on suspicion of insanity, without first filing a complaint and obtaining an order of court for the arrest, in an action of false imprisonment, he can justify only by showing by a preponderance of the evidence that he had reasonable ground to believe, and did believe at the time, not only that defendant was insane, but that he was in such a condition it would not be safe to delay his arrest until proper process could be obtained. If, therefore, plaintiff showed the arrest without a warrant, he made a *prima facie* case, as against the sheriff, to go to the jury; and it was upon defendant to establish to the satisfaction of the jury, by a preponderance of the evidence, that when he made the arrest he was within

the rule above laid down by us. The court had no right to instruct a verdict for defendant Ruffner, unless it appeared that on no reasonable theory of the evidence could it be held that he had failed to establish his defense. In the case at bar, we are of the opinion that on the evidence introduced this question was one for the jury, and the court should have submitted the issue as against defendants George C. Ruffner and his bondsmen to the jury under proper instructions as to the law.

The judgment of the superior court of Yavapai county is affirmed as to the defendants Weston, Sullivan, Looney and Allen, and reversed as to the other defendants, and remanded, with instructions to grant a new trial on the first cause of action as against the defendant George C. Ruffner and his bondsmen.

McALISTER and ROSS, JJ., concur.