17180

T. M. DOUGLAS, Respondent, v. WILLIAM S. HALL, Superintendent, S. C. State Hospital, Appellant

(93 S. E. (2d) 891)

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Appellant,*

*Messrs. Watson, Funderburk & McGuinn,* of Columbia, *for Respondent,*

552

July 5, 1956.

Legge, Justice.

By order of the Probate Court for Greenville County dated March 25, 1955, respondent was adjudged insane and committed to the custody of appellant, Superintendent of

the State Hospital. The order was issued pursuant to Section 32-912 of the 1952 Code, 1955 Supplement, upon application by respondent's wife, and after examination of respondent by two designated physicians. Less than three months thereafter he applied to the Judge of the Richland County Court for a writ of *habeas corpus,* alleging in his petition therefor that he had been illegally committed and "is presently unlawfully restrained of his liberties", and "that he is not insane and is confident that he can establish his sanity upon a fair and impartial hearing before this Court". Appellant made return, contending, *inter alia,* that the writ should be discharged for the reason that the petitioner had not exhausted the remedy available to him under Section 32-930 of the 1952 Code, 1955 Supplement. The trial judge, overruling this contention, proceeded on June 2, 1955, to take testimony "on the merits", and on the same day adjudged the petitioner sane and ordered his release. Appellant renews here his contention referred to above.

Respondent has moved to dismiss upon the ground that the State, being in reality the appellant, may not appeal from an order in a *habeas corpus* proceeding discharging the petitioner from custody. That the State may appeal from such order was recognized in *Ex parte Murray and Harris,* 112 S. C. 342, 99 S. E. 798, 5 A. L. R. 1152. Cf. Code 1952, Section 17-363. The motion to dismiss is denied.

This Court has not had occasion heretofore to pass upon the question of whether one who has been adjudged insane and committed by an order of court to the State Hospital may, in *habeas corpus* before another tribunal, attack the factual finding of his insanity at the time of his commitment, or try the issue of his return to sanity. *Sims v. McLure,* 8 Rich. Eq. 286, 28 S. C. 286, to which respondent refers in his brief, is no authority for his contention that the fact of sanity may be re-examined in a *habeas corpus* proceeding; that case involved only the validity (*i. e.,* the fairness) of

certain contracts made with a lunatic without notice of the lunacy.

The limitations upon the scope of the writ are well expressed in 25 Am. Jur., *Habeas Corpus,* Section 13, as follows:

"The inquiry on a writ of *habeas corpus* is addressed not to errors committed by a court within its jurisdiction but to the question of whether the proceedings or judgment under which the petitioner is restrained are void. Ordinarily, such an inquiry involves no question other than those which pertain to jurisdiction. The function of a writ of *habeas corpus* in permitting the petitioner to challenge by collateral attack the jurisdiction under which the process or judgment by which he is deprived of his liberty was issued or rendered cannot be distorted by extending the inquiry to mere errors of trial courts acting within their jurisdiction."

In *Ex parte Klugh,* 132 S. C. 199, 128 S. E. 882, 885, which concerned a prisoner convicted of crime and confined in the State Penitentiary, Mr. Justice Marion, speaking for the court, said:

"It is fundamental that *habeas corpus* is a collateral remedy, subject to the limitations common to collateral proceedings, and calls in question only the jurisdiction of the court whose judgment is challenged. * * * It is only when a judgment of conviction or sentence imposed is void, and not merely voidable, that relief may be had by *habeas corpus*".

In *Medlock v. Spearman,* 185 S. C. 296, 194 S. E. 21, it was reaffirmed that in a *habeas corpus* proceeding for a convicted prisoner's release from imprisonment the court cannot consider the sufficiency of the evidence to sustain the conviction.

And in *Ex parte Boyle,* 128 S. C. 535, 123 S. E. 9, which involved the arrest of one who had sold meat that had not been slaughtered and inspected in accordance with a city ordinance, it was declared that an issue of fact could not be

determined upon a writ of *habeas corpus,* and the court therefore addressed itself only to the issues of law presented by the petitioner's contentions: (1) that the city council had no power to pass the ordinance, and (2) that the ordinance was unconstitutional upon its face.

The rule expounded in *Medlock v. Spearman, supra,* applies with equal logic to respondent's contention that he can in this proceeding attack the factual finding by the Probate Court that he was insane at the time of his commitment.

As to whether one seeking release from the custody to which he has been committed upon judicial determination of his insanity may litigate the issue of his present sanity in a *habeas corpus* proceeding, the decisions in other jurisdictions are not uniform. Many of them are collected in the annotations following *State ex rel. Colvin v. Superior Court,* 1930, 159 Wash. 335, 293 P. 986, 73 A. L. R. 555, and *Overholser v. Boddie,* 1950, 87 U. S. App. D. C. 186, 184 F. (2d) 240, 21 A. L. R. (2d) 999. In general, those that hold that a person confined in an insane asylum may have his sanity tested in a proceeding in *habeas corpus* for his release appear to be based upon one or other of the following propositions:

1. That no other adequate means of such relief has been provided by statute; or

2. That the statute providing such means of relief is, expressly or impliedly, not exclusive.

In our opinion the writ of *habeas corpus* may not be converted into an inquisition of lunacy if by statute an adequate remedy is provided whereby one who has been adjudged insane may litigate the issue of his return to sanity. Unless contrary legislative intent be clearly apparent, such statutory remedy should be deemed exclusive.

The General Assembly has provided in the Act of March 7, 1952, 1955 Code Supplement, Sections 32-909 through 32-932, a reasonably speedy and, in our opinion, adequate

procedure whereby a person confined in the State Hospital as insane may litigate the issue of his return to sanity. Section 32-930 reads as follows:

"Any patient confined under the provisions of §§ 32-912 and 32-915, who requests to be discharged or whose discharge is requested in writing by the person who made the application for his admission, by his spouse, adult next of kin, legal guardian or friend shall be discharged within seven days after receipt of the request except that, such request may be denied by the superintendent of the State Hospital if the request be made sooner than thirty days after admission; and except also that, upon application to the probate·court supported by a certification by the superintendent of the hospital that·in his opinion discharge would be unsafe for the patient or for others, such discharge may be postponed for a period not to exceed fifteen days which the court may determine to be necessary for the commencement of proceedings for a judicial determination pursuant to §§ 32-918 to 32-926".

The proceedings for judicial determination pursuant to Sections 32-918 to 32-926 include:

1. Application to the Probate Court for hospitalization of the proposed patient, such application to be accompanied by .either (a) a certificate of a physician stating that he has examined the proposed patient and is of opinion that he is mentally ill, or (b) a written statement by the applicant that the proposed patient has refused to submit to examination by a physician;

2. Prompt examination of the proposed patient by two court-appointed examiners;

3. If both examiners report that the proposed patient is mentally ill, a full hearing, to be held not later than fifteen days thereafter, at which the proposed patient shall be represented by counsel and the court shall receive all relevant and material evidence offered on the issue of his sanity; and

4. If upon the hearing the court shall find the proposed patient to be mentally ill and order his hospitalization, the

right of appeal to the court of common pleas, and to trial there *de novo*.

Respondent relies upon Section 32-950.13, which declares that: "Any individual detained pursuant to this chapter shall be entitled to the writ of *habeas corpus* upon proper petition by himself or a friend to any court generally empowered to issue the writ of *habeas corpus* in the county in which he is detained". But this section does not purport, either expressly or by necessary implication, to broaden the scope of *habeas corpus*. It merely reaffirms that the writ is available, as it always has been, to test not the factual issue of the petitioner's sanity but the legality of the proceedings or judgment under which he was committed and is being confined.

Reversed.

STUKES, C. J., OXNER, J., and G. BADGER BAKER, A. A. J., concur.

TAYLOR, J., dissents.

TAYLOR, Justice (dissenting).

I regret I am unable to agree with the conclusion reached in the Majority Opinion. The authorities cited therein have relation to those cases of confinement in connection with crime and in my opinion not applicable to instant case as Respondent was confined as a mental incompetent. For this and the other reasons set forth in this opinion, I therefore dissent.

Respondent was committed to the custody of Appellant, Superintendent of South Carolina State Hospital for the Insane, by Order of the Judge of Probate for Greenville County, dated the 25th day of March, 1955, pursuant to the provisions of Section 32-912 of the 1952 Code of Laws of South Carolina, upon application of respondent's wife and after examination by two designated medical examiners.

Upon presentment of petition by respondent, the Judge of the Richland County Court issued a writ of *habeas cor-*

*pus,* and testimony was taken. By Order dated June 2, 1955, His Honor, Judge Bates, held that the respondent was not insane and that he was unlawfully detained and ordered his release from the custody of appellant.

Respondent's petition sets forth that he was illegally committed and unlawfully restrained, that he was not insane and could so show upon a hearing before the Court.

By way of return, appellant set forth for a first defense that: (a) Petitioner was committed under the terms of Section 32-912 of the 1952 Code of Laws of South Carolina and that the Court was without jurisdiction as the discharge of such patients is governed by Section 32-930 of the 1952 Code of Laws of South Carolina; (b) That the Court was without jurisdiction in that the petitioner having been committed by the Probate Court of Greenville County, the jurisdiction lay in that Court.

For a second defense: That petitioner had not exhausted his administrative remedies in that he had not made application for a discharge or otherwise complied with the requirements of Section 32-930.

For a third defense: Appellant entered a general denial and avers that Respondent is insane and set forth in particulars why he so contends.

The first and second defenses were overruled; and after taking testimony on the merits of the third, Judge Bates ordered respondent released from custody.

It is conceded that petitioner had not complied with the provisions of Section 32-930 of the 1952 Code of Laws of South Carolina (Cumulative Supplement) prior to filing his petition for writ of *habeas corpus;* and appellant contends that the Court erred in granting the writ when petitioner had not exhausted the statutory remedy available to him under this section of the Code, which states:

"Any patient confined under the provisions of §§ 32-912 and 32-915, who requests to be discharged or whose dis-

charge is requested in writing by the person who made the application for his admission, by his spouse, adult next of kin, legal guardian or friend shall be discharged within seven days after receipt of the request except that, such request may be denied by the superintendent of the State Hospital if the request be made sooner than thirty days after admission; and except also that, upon application to the probate court supported by a certification by the superintendent of the hospital that in his opinion discharge would be unsafe for the patient or for others, such discharge may be postponed for a period not to exceed fifteen days which the court may determine to be necessary for the commencement of proceedings for a judicial determination pursuant to §§ 32-918 to 32-926."

As stated in the Majority Opinion, this question has not heretofore been before this Court. The decisions of other Courts on the subject are of interest.

In *State ex rel. Colvin v. Superior Court,* 159 Wash. 335, 293 P. 986, 989, 73 A. L. R. 555, annotation on page 567, states:

"In general, it has been held that where there is a specific statutory remedy provided, such remedy will be held to be exclusive, either in fact or by necessary implication, and to preclude a resort to *habeas corpus.*"

The statute under consideration in that case provided that certain persons found to have committed certain crimes and acquitted because of insanity or mental irresponsibility should be committed as criminally insane persons. Other sections provided that when such persons claim to have become sane, upon certification to the warden having custody of such persons, such warden should present the presentment of the petitioner to the Court whereupon the case should be set down for trial before a jury. In passing upon the question of whether the statutory remedy was cumulative or exclusive, the Court stated: "Manifestly, the legislative intent is that this statutory remedy shall be exclusive."

And further commented to the effect that the decisions of the Court seemingly justified this general statement as having to do with administrative methods and remedies, and not judicial remedies, looking to the discharge of persons committed as insane persons, and further concluded that the statutory remedy furnished a restrained person claiming to have become sane an adequate judicial remedy which rendered it unnecessary to resort to *habeas corpus* proceedings. To like effect is 39 C. J. S., *Habeas Corpus*, § 7, p. 437:

"* * * the writ of *habeas corpus* will not ordinarily be granted where there is another adequate remedy, * * *. The instances in which the writ is granted, when the law has provided another remedy in regular course, are exceptional and usually confined to situations in which there is peculiar and pressing need for it or where the process or judgment under which the prisoner is held is wholly void." And in 25 Am. Jur., *Habeas Corpus*, Section 85, page 209, we find: "* * * In some jurisdictions, however, the existence of another adequate statutory remedy to obtain the release of one committed as criminally insane has been held to preclude the use of *habeas corpus* for this purpose, but such, of course, is not the rule in jurisdictions where such other remedy is not deemed exclusive."

The following general statement appears in annotation entitled *"Habeas corpus* on ground of restoration to sanity of one confined as an incompetent other than in connection with crime", 21 A. L. R. (2d) 1004, 1005:

"While there has been some disagreement, under particular statutes, as to the extent of power in such a proceeding, it has been held or recognized in many cases that in the absence of contrary statute, *habeas corpus* on the ground of restoration to sanity of one confined as an incompetent other than in connection with crime is proper procedure."

*Overholser v. Boddie*, 87 U. S. App. D. C. 186, 184 F. (2d) 240, 242, 21 A. L. R. (2d) 999, is authority for the proposition that one confined to an institution and not on

parole can seek his release by *habeas corpus,* the Court using the following language:

"* * * The statute is silent, moreover, as to the right of a confined patient to assert he has regained sanity and to ask release from custody because of his changed mental condition, although it extends that right to one not confined. Such silence recognizes the remedy of *habeas corpus;* * * *."

The issuance of the writ of *habeas corpus* is specifically provided for in the State of Arizona: " 'When the imprisonment was at first lawful, yet by some act, omission or event, which has taken place afterwards, the party has become entitled to be discharged.' " Pen. Code 1913, § 1359; *Christiansen v. Weston,* 36 Ariz. 200, 284 P. 149, 151.

In *Kellogg v. Cotheran,* 87 Cal. 192, 25 P. 677, 679, 12 L. R. A. 104, the California Court based its opinion primarily upon, and recites a portion of, an act requiring that:

" 'The trustees shall reject all other orders or applications for the release or removal of any insane person, except the order of a court or judge on proceedings in *habeas corpus.*' " St. 1885, p. 32 § 1.

In *People ex rel. Starkweather v. Righeimer,* 306 Ill. 308, 137 N. E. 858, the opinion is based upon a statute which provided Rev. St. 1921, c. 85, § 24, now S. H. A. ch. 91½, §§ 7-15 to 7-17:

" 'Every person confined as insane shall be entitled to the benefit of the writ of *habeas corpus,* and the question of insanity shall be decided at the hearing.' "

The Indiana Court's decisions are also based upon a statute providing for the issuance of a writ of *habeas corpus.*

Iowa has a statute, Code, § 3577, I. C. A. § 229.37, which provides that all persons confined as insane shall be entitled to the benefit of the writ of *habeas corpus,* and the question of sanity shall be determined at the hearing. See *Madsen v. Obermann,* 237 Iowa 461, 22 N. W. (2d) 350, and the New Jersey Court held in Re R. R., 140 N. J. Eq. 371, 54 A.

(2d) 814, 815, that the statutory duty was mandatory "to 'find and determine whether the person in whose behalf the writ was sued out, is sane or insane.' "

The New York Court, construing a statute reading as follows: Any one in custody as an insane person is entitled to a writ of *habeas corpus,* upon a proper application * * *. Upon the return of such writ, the fact of his insanity shall be inquired into and determined. * * *' " Insanity Law of 1896, c. 545, § 73, now Mental Hygiene Law, McK. Consol. Laws, c. 27, § 204, stated:

"The Legislature by this section expressly extended the writ of *habeas corpus* to cases of lawful commitments of persons as insane who have subsequently, while held under such lawful commitments, recovered their reason." *In re Andrews,* 126 App. Div. 794, 111 N. Y. S. 417, 421.

The State of Oklahoma has a statute providing:

"Anyone in custody as a mentally ill person or mentally retarded person, pursuant to this law, is entitled to a writ of *habeas corpus,* upon a proper application made by him or some relative or friend in his behalf. Upon the return of such writ, the fact of his mental illness or mental retardation shall be inquired into and determined." 43 A. O. S. Supp. § 99.

The Wyoming Court construing a statute, Rev. St. 1899, §§ 4894, 4895, providing a procedure to establish restoration to sanity stated it was of doubtful effect and impliedly followed the rule that the remedy available to preclude the use of the writ of *habeas corpus* must be full and adequate and based its decision upon the conclusion that the ambiguous remedy available was of such doubtful effect as to make it inadequate and used the following language:

"If the statute had clearly authorized an order for a party's release from custody by the proceeding provided for, it might, perhaps, have afforded a· sufficient reason for requiring a resort to it before the issuance of a writ of *habeas corpus;* * * *." *Byers v. Solier,* 16 Wyo, 232, 93 P. 59, 62, 14 L. R. A., N. S., 468.

In the instant case, I have before me the question of whether the statutory provision, Section 32-930, 1952 Code of Laws of South Carolina, is exclusive and, if so, whether or not it is adequate. Section 32-950.13 of the 1952 Code of Laws of South Carolina, Cumulative Supplement, provides:

"Any individual detained pursuant to this chapter shall be entitled to the writ of *habeas corpus* upon proper petition by himself or a friend to any court generally empowered to issue the writ of *habeas corpus* in the county in which he is detained."

It is the right and duty of the State to provide for the care and treatment of its insane citizens with such attendant confinement and restraint of liberty as may be necessary to accomplish the purpose. Such restraint being with the view for the insane persons' own protection as well as that of others and with the view that proper medical treatment be administered and a cure effected where possible. There can be no reason to doubt the propriety of making provisions to secure such persons' protection and care in such a way as to prevent them from injuring, or being injured, if they are dangerous, or in need of seclusion; but such authority can only exist over those who are disqualified to act for themselves and the power of determining their condition is one of great importance. In this country where all legislation must be within constitutional limits, no one can be deprived of his liberty without due process of law; and the form of the proceeding takes on a very serious aspect. An Order for the commitment of a person to an insane hospital is essentially a judgment by which he is deprived of his liberty, and it is a cardinal principle of American jurisprudence that before any judgment can be pronounced against a person there must have been a trial of the issue upon which the judgment is given. *State ex rel. Blaisdell v. Billings,* 55 Minn. 467, 57 N. W. 206, 794, 43 Am. St. Rep. 525.

No matter what be the ostensible or real purpose of restraining a person of his liberty, whether it is to punish for an offense against the law or to protect the community from

apprehended acts, such restraint cannot be made permanent or of long continuance unless by due process of law. *People ex rel. Ordway v. St. Saviour's Sanitarium,* 34 App. Div. 363, 56 N. Y. S. 431.

"* * * It is a fundamental principle that every person restrained of his liberty is entitled to have the cause of such restraint inquired into by a judicial officer. The judicial department of the government cannot by any legislation be deprived of this power or relieved of this duty. It must afford to every citizen a prompt, complete, and adequate remedy by due process for every unlawful injury to his person or property. This is absolutely essential to a constitutional government. The legislature may make laws, prescribe rules of action, and provide remedies not provided by the constitution; the judiciary alone can administer the remedy. * * * Buswell on Insanity, says: 'In cases where a person, whether sane or insane, is detained or confined as a lunatic without authority of law, it appears that such person is entitled to be brought into court upon a writ of *habeas corpus,* in order that the question of the legality of his detention may be inquired into. But it is necessary that the affidavit should show that the detained person is not a dangerous lunatic, and that he is in a fit state to be removed; and the court may, if necessary, enlarge the time for making the return.' " *In re Boyett,* 136 N. C. 415, 48 S. E. 789, 792, 67 L. R. A. 972.

The general object of the writ is to set at large those who are illegally restrained of their liberty, *in Re Kottman,* 2 Hill, 363, 27 Am. Dec. 390, and a specific remedy provided by the statute has been held to be cumulative and not exclusive of a resort to *habeas corpus, Kennedy v. Meara,* 127 Ga. 68, 56 S. E. 243, 9 Ann. Cas. 396; *Byers v. Solier,* 16 Wyo. 232, 93 P. 59, 14 L. R. A., N. S., 468; 25 Am. Jur. 156, Section 20.

The writ is commonly invoked to determine the right to the custody of infants and persons alleged to be incompetent or insane. 25 Am. Jur. 158, Section 23.

It is generally held that a person committed as insane has the right to have his sanity determined on *habeas corpus*. 25 Am. Jur. 209, Section 85, citing *Re Buchanan,* 129 Cal. 330, 61 P. 1120, 50 L. R. A. 378; *People ex rel. Peabody v. Chanler,* 196 N. Y. 525, 89 N. E. 1109, 25 L. R. A., N. S., 946; *Northfoss v. Welch,* 116 Minn. 62, 133 N. W. 82, 36 L. R. A., N. S., 579.

A writ of *habeas corpus* should ordinarily be filed in the Court in the district where the petitioner is confined, 25 Am. Jur. 235, Section 123. In some jurisdictions, however, the existence of another adequate statutory remedy to obtain the release of one committed as criminally insane has been held to preclude the use of *habeas corpus* for this purpose. But such, of course, is not the rule in jurisdictions where such other remedy is not deemed exclusive, 73 A. L. R. 567.

In keeping with the foregoing, I am of opinion that Section 32-950.13 does little more than reiterate the right of an individual who is unlawfully detained to resort to *habeas corpus,* but its very presence is indicative that Section 32-930 was not intended to be exclusive but provides the mechanics whereby one so detained might gain his liberty without resort to *habeas corpus;* however, "It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty, and there is no higher duty than to maintain it unimpaired." Church—*Habeas Corpus.* And a legislative body is without authority to impinge upon, abridge, or circumvent the writ of *habeas corpus.*

Appellant relies strongly upon *State ex rel. Colvin v. Superior Court,* 159 Wash. 335, 293 P. 986, *supra.* The decision in that case was based upon the wording of the statute of that State which was held to be both exclusive and adequate, therefore not applicable to the instant case. Construing the statute strictly, it may be noted that one seeking his release under the provisions of Section 32-930 may be detained for a period of fifty-two days before exhausting his remedy under the statute if it is held to be ex-

clusive. To my mind, such is wholly inadequate and constitutes unreasonable delay and not intended to be exclusive. Otherwise, there is no reason for incorporating into the Act Section 32-950.13 which provides: "* * * any court generally empowered to issue the writ of *habeas corpus* in the county in which he is detained."

Appellant also contends that the hearing Judge's findings are contrary to the evidence. A review of the testimony reveals that a physician member of the staff of the State Hospital was of the opinion that respondent suffered from delusions of infidelity on the part of his wife or a condition known as paranoia; that he could be easily influenced in the making of contracts; that respondent was not well enough to be released, and it was questionable as to whether his condition could be retarded; that the probabilities of recovery are very poor. He further testified that Respondent was permitted the freedom of the grounds, had adjusted himself satisfactorily and showed no tendencies to do himself or others harm; and that it would be advantageous for him to have pleasant surroundings.

A son testified that Respondent had threatened his mother, and the two had struggled over a gun but does not remember the reason why as he was a small boy at the time and is now thirty-four years of age; that when respondent learned his wife had left him the last time, he became upset and nervous and attempted to get out of the car when it was traveling 65 or 70 miles per hour. He stated upon cross-examination that he had never known respondent to injure or harm his mother in any way.

Respondent's wife testified that she is fifty-three years of age and respondent is seventy; that their entire married life has been one of turmoil, threats, and accusations; that approximately twelve years prior to this she had left home and after six months of separation, she had gone back to live with him and had continued to do so until recently; that for the last three years respondent has done no work, and his only income is $57.26 per month paid him as Social

Security benefits; that she works as a waitress in an eating establishment to provide a living because "We don't have the money to just sit down. I had to work." She further testified that she had sought his consent to a divorce, but he refused; that she had him arrested and committed to the State Hospital because she couldn't live with him any longer, a portion of her testimony being: "* * * I begged him to try, just the two of us together, because it was the children—it was my children, anybody that I had any contact with, so my last plea with him was to let's try, just the two of us, to make a go of it away from everybody else, but it just wouldn't work. I couldn't do it. I have to make a living. * * * that about sums it up."

Respondent's sister, Mrs. Maggie Stokes, testified that respondent's mental condition is now as it has always been; that he has never been any other way; "If he's crazy now, he's always been crazy; that he has never mistreated his wife. She also testified that she went to see him often while in the State Hospital and on three different occasions had talked with one of the doctors who stated to her that "he can't find one thing wrong with him, but he said his wife put him here and she'll have to take him away, * * *." This testimony was unobjected to and the doctor was not produced to refute it or any showing made that he was not available even though the hearing was held in Columbia where the State Hospital is located. Mrs. Stokes further testified that she and her son live in her country home which has nine rooms; that she owns other property and has an income sufficient to care for respondent; that it is her wish that he be released from custody and be permitted to live with her.

Two other sisters substantiated the principal parts of Mrs. Stokes testimony. One of whom testified that she had talked with Dr. Carrigan of the State Hospital a number of times and was given "good hopes for him," and he stated on one occasion that they "only wanted to keep him a few days longer"; and Dr. Carrigan was not called as a witness to refute this testimony.

The physician who testified would not attempt to estimate the time spent in observing respondent, and it appears that his opinion was based primarily upon the "history" of the case which is made up largely of what others had said, principally the wife.

While the testimony of a psychiatrist must be given great weight in such matters, it does not necessarily follow that they are infallible and that all evidence to the contrary is of no value. The testimony of those who have known Respondent for a long period of time and are familiar with his way of life is also of probative value, and it cannot be said that the findings of the hearing Judge are without evidentiary support.

For the foregoing reasons, I am of opinion that all exceptions should be dismissed, and the Order appealed from affirmed.