STATE ex rel. PATRICK KELLY v. PROBATE COURT OF RAMSEY COUNTY and Another.[1]

April 26, 1901.

Nos. 12,491—(57).

**Order of Probate Court—Certiorari.**

An order of a probate court, made under G. S. 1894, § 4553, upon the petition of a person under guardianship for incompetency to be restored to capacity, is to all intents and purposes a judgment, and may be reviewed by certiorari, no appeal from such order being provided by statute.

**Removal of Guardian—Appeal.**

Such an order, though it result in the removal of the guardian, is not

[1] Reported in 85 N. W. 917.

an order removing the guardian, within the meaning of G. S. 1894, § 4665, subd. 2, and is not appealable.

### Return of Evidence—Certificate of Court—Failure to Object.

The writ of certiorari in this case commanded the probate court to return to the district court all the evidence offered at the hearing before it. Appended to the return is what purports to be such evidence. No point was made in the district court that all the evidence was not returned, and the cause was heard and considered in that court without objection to the return, or to the certificate attached to it; and it is *held* that, although the certificate to the return does not state that all the evidence was returned to the district court, it will be presumed that the probate court complied with the command of the writ of certiorari, and returned it all. Payson v. Everett, 12 Minn. 137 (216), followed.

### Evidence.

Evidence examined and considered, and *held* not to sustain the order of the probate court.

Writ of certiorari issued from the district court for Ramsey county to the probate court of that county to review an order made in the matter of the estate of Patrick Kelly, incompetent, denying his application for restoration to capacity. In the district court the case was tried before O. B. Lewis, J., who found in favor of relator and directed that the order be vacated and the proceedings remanded to the probate court for disposal. From a judgment entered as directed, St. Paul Trust Company, guardian, appealed. Affirmed.

*C. D. & T. D. O'Brien* and *Harvey Officer*, for appellant.

*Egan & Storey*, for respondent.

BROWN, J.

In 1898 respondent, Kelly, was, on the petition of his son, by reason of an insane and imperfect condition of his mental faculties, adjudged incompetent to have the charge and management of his property and affairs, and the St. Paul Trust Company was duly appointed his guardian. In March, 1900, one Webb, a friend of Kelly, filed a petition under G. S. 1894, § 4553, asking therein that the ability and competency of Kelly to take charge of his business affairs be judicially determined, and that he be "restored

to capacity." After due hearing in the probate court, the prayer of the petition was denied, and the proceedings were removed to the district court by certiorari. The district court, after hearing, upon the return of the probate court, overruled and vacated the order of that court, ordered the proceedings remanded for disposal according to law, and the guardian appealed to this court. The assignments of error present several questions, which will be considered, or those deserving special mention, in the order presented in appellant's brief.

1. It is contended by the appellant that the order of the probate court denying the petition of Kelly was a mere order for judgment, and not reviewable on certiorari. The statute under which the order was made provides:

"Any person who has been declared insane or incompetent * * * may petition the probate court * * * to have the fact of his restoration to capacity judicially determined. * * * If it be found that the person be of sound mind and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person * * * shall cease."

A judgment of a court is the final adjudication or determination of the merits of an action or proceeding. An order of the probate court granting or refusing an application of an incompetent person to be restored to capacity after hearing on the merits is a final adjudication of the application, and to all intents and purposes a judgment; there being no statute requiring the entry of a formal judgment. It is, at least, in the nature of a judgment, within the meaning of G. S. 1894, § 4414, subd. 7.

The statute under which this proceeding was conducted provides for no particular form of judgment or order, and any order, whatever its form, finally disposes of the proceeding. Probate orders of a nature similar to the one in the case at bar have been held judgments in other states. Wilks v. Murphy, 19 Mo. App. 221; Jameson v. Barber, 56 Wis. 630, 14 N. W. 859; Mitchell v. Mayo, 16 Ill. 83; Johnson v. Gillett, 52 Ill. 358. All probate orders are not judgments, however. Orders appointing administrators, orders for hearing on intermediate petitions, and similar ones,

are interlocutory, do not finally dispose of the proceedings, and are not judgments in any sense of the word. But an order such as that here under consideration, which puts an end to the proceedings, and finally determines the merits thereof, is in the nature of a judgment, with all the force and effect of such, and may, where no provision for appeal is made by statute, be reviewed on certiorari.

2. The second proposition urged by appellant is that the order in question, being in effect one removing the guardian, is appealable under G. S. 1894, § 4665, subd. 2, and that certiorari will not lie to review it. This statute provides for an appeal from probate to district court from an order appointing or removing a guardian, and it is contended that, as the result of an application of the nature of this one is the termination of the guardianship, the order is, in effect, one of removal, and appealable. We do not concur in this contention. The statute cannot be construed as broadly as counsel would have it. The clear intention of the statute is to provide for appeals from orders appointing or removing a guardian, made in proceedings instituted for that express purpose, and not from orders which may result in such removal.

3. The writ of certiorari commanded the probate court to return to the district court all the evidence, orders, and proceedings had or taken before it. The return of the probate court contains the petition on which the proceedings are founded, other files, papers, and orders, and what purports to be the evidence; but the certificate to the return does not recite that all the evidence is contained in the record, and it is urged by appellant that, it not appearing that all the evidence is returned, the order of the probate court should not be set aside for insufficiency of the evidence to sustain it.

No point was made in the district court, so far as the record before us discloses, that all the evidence was not contained in the return, nor is it claimed in this court that it was not in fact returned by the probate court. The writ of certiorari having commanded that court to return such evidence, it should be presumed, nothing appearing to the contrary, that the command was

complied with. Such was the holding in the case of Payson v. Everett, 12 Minn. 137 (216). In that case the certiorari was directed to a justice of the peace, and the statutes made it his duty to return all the evidence taken before him on the trial. He returned what purported to be the evidence, and the court held that it must be presumed that he performed his duty, and returned it all.

The distinction between a case of this character and an appeal from justice court, where the justice is required to return the evidence only when requested to do so by one of the parties, is pointed out in Hinds v. American Ex. Co., 24 Minn. 95. On principle the Payson case is in point, and we follow and apply it. This presumption that the probate court performed its duty, and complied with the commands of the writ, is not conclusive, however, and, had objection been made in the district court that all the evidence was not in fact returned, an amended return would have been ordered.

4. The question we have had the most difficulty with is whether the evidence is so clearly against the order and determination of the probate court as to justify the reversal thereof by the district court. After very carefully examining the record, we have reached the conclusion that the district court should be sustained.

Kelly was placed under his present guardianship on the petition of his son upon the ground and for the reason that he was not competent to have the care of his property and affairs because of "an insane and imperfect condition of his mental faculties," not because of "old age and loss and imperfection" of such faculties, as claimed by counsel for appellant. He had previously been adjudged insane, and committed to the hospital, but was released in the course of two years for irregularities or defects in the proceedings by which he was so committed. He was committed to the hospital in 1894. His wife was appointed his guardian at that time, and continued as such until 1897, when he resumed charge of his affairs, and so continued until placed under his present guardianship in 1898. He is quite old, and apparently has had much to contend with during the past few

years.  Quite a snug little fortune, accumulated by his hard labor and industry, has been dissipated in litigation, and it is not at all strange that he has been possessed with what would seem to be delusions.

At the hearing of this petition in the probate court, six reputable physicians testified that, in their judgment, basing their opinion upon an examination of Kelly, and from an observation of his conduct in court, he was fully competent to attend to his affairs, and no one testified to the contrary.  The probate judge rejected this testimony, and, if we understand the brief of appellant, based his decision denying the petition upon his own personal knowledge of the characteristics and previous conduct and mental condition of Kelly.  No evidence was offered to show such characteristics, or his previous mental condition, or to show that he was at the time of hearing incompetent to protect his property and property rights.  It does not appear that he is likely to waste and dissipate his property.  Indeed, the inference to be gathered from his whole life, and from the fear possessed by him at this time that others are endeavoring to get his property from him, would tend strongly to prove and to show that he would take the best of care of what he has left.  He may have had delusions in the past.  He showed a sincere desire on his examination to forget them, but counsel would not let him, and, characteristic of the man evidently, when pressed with questions pertaining thereto, he reaffirmed his belief in what counsel say are delusions.  He may have had delusions on the subject mentioned in his cross-examination, and still be fully competent carefully to guard and protect his rights and all his business affairs.  One of the delusions said to be prominent with him is that the members of his family have turned against him, and had in the past conspired together to poison him, and otherwise to annoy and harass him.  There is no evidence on this subject in the record before us other than his cross-examination.  We are not informed just how the members of his family have in fact treated him in the past.

The probate judge may have known these things to be delusions, and unfounded in fact, but his knowledge on the subject is

not part of the record, and we cannot consider it. He had no right, upon his own knowledge of the mental condition of Kelly, to reject the testimony of the physicians. He was bound to determine the question as to the competency of Kelly from the evidence offered before him, and from nothing else. And as there is nothing in the record before us on which to base the decision of the probate court, except that Kelly once had certain insane delusions, which, when pressed on cross-examination, he still appears to believe in, and as there is no evidence to show that he is in fact incompetent to attend to his business affairs, the district court rightly reversed the decision of the probate court. The testimony of the experts was sufficient to fully rebut any inference or presumption as to Kelly's mental condition arising from a prior adjudication of incompetency.

The request of respondent that we remand the cause with directions to the probate court to enter an order restoring Kelly to capacity cannot be granted. The district court "vacated and overruled" the order of the probate court, and an affirmance of the district court leaves the proceedings as though no hearing had been had at all. Further proceedings must be had in the probate court before any further order in the premises can be made. It is therefore ordered that the judgment appealed from be affirmed, and the cause remanded to the district court, with directions to that court to remand the proceedings to the probate court for a rehearing.

Judgment affirmed.