## WILLIAM L. NORTHFOSS v. G. O. WELCH.[1]

November 10, 1911.

Nos. 17,460—(203).

**Release of insane prisoner — statute not retroactive.**

Petitioner was tried in 1904 for crime, acquitted on the ground of insanity at the time the act was committed, and sentenced to be committed to a state hospital for the insane until legally discharged, under G. S. 1894, § 7344. *Held*, that chapter 358, Laws 1907, providing that a person so acquitted and committed shall not be liberated, except upon the order of the court committing him and until the superintendent of the hospital shall certify in writing to the court that, in his opinion, such person is wholly recovered and that no person will be endangered by his discharge, is not retroactive, and does not apply to commitments made prior to its passage.

1 Reported in 133 N. W. 82.

[Note]   As to confinement of one acquitted of crime on the ground of insanity, including question of right to discharge on restoration to sanity, see note in 1 L.R.A.(N.S.) 540; and supplemental note in 25 L.R.A.(N.S.) 946.

**Discharge upon recovery of reason.**

Where a person committed to an insane hospital under G. S. 1894, § 7344, recovers his sanity in fact and in the opinion of the superintendent of the hospital, he is entitled to be discharged therefrom, and his further detention is illegal.

**Habeas corpus.**

Where, in such a case, the superintendent refuses to discharge such person, habeas corpus is a proper remedy.

Relator, having been committed to an insane asylum under the circumstances related in the opinion, petitioned the district court for Otter Tail county, by his guardian, for a writ of habeas corpus directed to Dr. G. O. Welch, superintendent of the Minnesota State Hospital for the insane at Fergus Falls. The writ was granted and return thereto was made. The matter was heard before Nye, J., who made findings, as specified in the third paragraph of the opinion, and remanded the relator to the hospital. From this order, relator appealed. Reversed, with directions to discharge the relator.

*Townley & Frisbee* and *John W. Mason,* for appellant.

*George T. Simpson,* Attorney General, *H. J. Maxfield,* County Attorney, and *Alfred W. Mueller,* for respondent.

BUNN, J.

In December, 1904, the petitioner, William L. Northfoss, was tried before the district court for Wadena county on an indictment charging assault in the second degree. He was acquitted by the jury on the ground that he was insane at the time the offense was committed. His discharge being considered manifestly dangerous to the peace and safety of the community, the court adjudged that he be committed to the State Hospital for the insane at Fergus Falls for safe-keeping and treatment until legally discharged. Since December 19, 1904, Northfoss has been an inmate of the hospital.

This proceeding is habeas corpus. The petition alleged that Northfoss was fully cured and restored to sanity, and was entitled to be discharged. The writ was issued and served on respondent, the superintendent of the hospital. The return stated that Northfoss was held in the hospital in accordance with the commitment issued

from the district court of Wadena county in December, 1904. The matter was heard, testimony taken, and findings of fact and conclusions of law were made.

The trial court found that Northfoss was a proper person to be paroled from the hospital; that, had he been committed by a probate court, he would have long since been paroled or discharged by the respondent, for the reason that he appears to be in a sane and normal condition and much improved physically; that the respondent is unwilling to and declines to make the certificate required by chapter 358, p. 497, Laws 1907, solely for the reason that he declines to vouch for or guarantee the future conduct of Northfoss, and that he will not make such certificate for any person confined in the hospital; that, because the respondent declines to make such certificate, petitioner is still detained in the hospital. As conclusions of law, the court, "for the reason that said Dr. G. O. Welch refuses to make such certificate required by the statute heretofore referred to," refused to discharge the petitioner, and ordered that he be remanded to the hospital. From this order petitioner appealed.

The facts may be summarized thus: (1) The petitioner has recovered his sanity. (2) The superintendent of the hospital still detains him in the hospital, though acknowledging that he is sane, solely on the ground that he is unwilling to make the certificate required by chapter 358, p. 497, Laws 1907, because he is unwilling to vouch for or guarantee the conduct of any person who has been confined in the hospital. (3) Because of this position of the superintendent, a sane man is confined in a hospital for the insane.

It is apparent that the question argued before the trial court, and upon which the decision hinged, was the constitutionality of the provision of the 1907 law requiring the certificate of the superintendent, and that such court, being of the opinion that this provision was valid, decided that it had no power to discharge the petitioner, in the absence of such certificate. It fairly appears from the findings and conclusions that the court would have discharged the prisoner, had it not been for the provision of this law in question.

1. It is vigorously argued here by counsel for petitioner that the law requiring the certificate of the superintendent is unconstitu-

tional. Counsel for respondent contend that this law does not apply to this case, because passed after the commitment of petitioner to the hospital. But each contention leads to the same result. In either case, the statute in force at the time petitioner was sentenced would govern the question of his right to a discharge. If, therefore, it can be held that the 1907 law does not apply, it is unnecessary to decide the question of its constitutionality.

The law in force at the time of petitioner's commitment was G. S. 1894, § 7344 (R. L. 1905, § 5376), which reads as follows:

"When any person indicted for an offense shall be, on trial, acquitted by the jury by reason of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause; and thereupon, if the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the community, it may order him to be committed to a hospital for the insane for safe-keeping and treatment, or to prison, or may give him into the care of his friends, if they shall give satisfactory bond, conditioned that he shall be well and securely kept; otherwise he shall be discharged."

By chapter 358, p. 498, Laws 1907, entitled "An act to amend sections 5375 and 5376, R. L. 1905, relating to insanity," section 5376 was amended in several particulars; but the amendment material here is the following provision: "No such person so acquitted shall be liberated therefrom [from the hospital] except upon the order of the court committing him thereto, and until the superintendent of the hospital or asylum where such person is confined shall certify in writing to such committing court that, in his opinion, such person is wholly recovered, and that no person will be endangered by his discharge."

There is nothing in the language of the 1907 act either directly or by implication making its provisions retroactive. Clearly the provision requiring the certificate of the superintendent made it more difficult for a person committed to obtain his discharge after he had recovered his sanity than it was under the laws that were in force before. Section 1923, R. L. 1905, provides that the superintendent of a hospital for the insane "may discharge any patient

116 M.—5.

certified by him to be recovered." It is plain that any patient who has recovered his sanity is entitled to be discharged, and it is therefore right to say that, under the law as it existed in 1904, petitioner was entitled to be discharged when he recovered his sanity. The 1907 law purported to attach an onerous condition to this right, to make it depend upon the order of the court and the certificate of the superintendent that no person will be endangered by his discharge. Under well-settled rules of construction, it must be held that the 1907 law was not intended to apply, and does not apply, to cases of commitments to the hospital prior to its passage.

2. We have, then, this situation. The petitioner is sane and in good physical health. He would be discharged by respondent, were it not for the provisions of the 1907 law, which we hold do not apply. Petitioner being sane in fact, and in the opinion of the respondent, he is entitled to be discharged. His detention is therefore illegal. Clearly he is entitled to some remedy for this wrong.

3. Is habeas corpus the proper remedy? The office of the writ of habeas corpus is to afford the citizen a speedy and effective method of securing his release when illegally restrained of his liberty. State v. Bailey, 106 Minn. 138, 118 N. W. 676, 19 L.R.A.(N.S.) 775, 130 Am. St. 592. The writ lies in all cases of illegal imprisonment by commitment, detention, confinement or restraint, for whatever cause, or under whatever pretense. The writ goes to inquire into the cause of the imprisonment. See note to McLeod Case, 3 Hill (N. Y.) 635, 647. Where the original detention was legal, but has become illegal by reason of matters ex post facto, as where the prisoner has been pardoned, or where the period for which he was sentenced has expired, habeas corpus will lie. 15 Am. & Eng. Enc. (2d ed.) 171, and cases cited.

Our statutes do not change these rules. Section 4573, R. L. 1905, provides that "every person imprisoned or otherwise restrained of his liberty, except persons committed or detained by virtue of the final judgment of any competent tribunal, * * * may prosecute a writ of habeas corpus to obtain relief from such imprisonment or restraint, if it proves to be unlawful." Section 4587 provides that, if it appears on the return that the prisoner is in custody by virtue

of a process of a court legally constituted, he can only be discharged in certain specified cases. One of these is "where, though the original imprisonment was lawful, yet by some act, omission or event which has taken place afterward, the person is entitled to be discharged."

Both the common law and statutory rules fit this case. The original commitment of petitioner was lawful, but because the judgment has ceased to be operative by reason of a matter ex post facto, or, as the statute puts it, "by an event which has taken place afterward," he is entitled to be discharged from the imprisonment. The case is quite analogous to one where the prisoner is kept in prison after a pardon or after the term of his sentence has expired.

As before pointed out, petitioner was entitled to be discharged from the hospital when he recovered his sanity. The question of what authority is to determine whether the patient has recovered is eliminated in this case, because, as we interpret the findings, the superintendent is of the opinion that there has been recovery, and he would discharge the patient, were it not for the mistaken supposition that he is required to guarantee his future conduct. We do not hold that the question of a patient's recovery can be inquired into on habeas corpus, in the absence of the statement required by the general law governing the discharge of patients from hospitals for the insane, but expressly limit our decision to cases where the detention has become illegal and the hospital authorities have refused the discharge on grounds other than the health of the patient.

On the general principles governing the law of habeas corpus, the conclusion is irresistible that this is a proper case for the application of that remedy. We do not see that petitioner has another remedy that would be adequate and speedy. Clearly there is no right of appeal. Nor would an application to vacate or modify the judgment be an effective remedy. Defendant was adjudged insane and committed to the hospital for care and treatment "until legally discharged." There was no provision of the law prior to 1907 that gave the court which rendered the judgment power to discharge the prisoner from the hospital, and it cannot be said that an application to that court to modify or vacate the judgment, so as to adjudge

the prisoner's restoration to sanity and direct his discharge, would be either an adequate or proper remedy. R. L. 1905, § 3831, relating to proceedings for restoring to capacity a person who has been declared insane or incompetent, applies only to persons under guardianship, and does not furnish a remedy available to the petitioner. That there might be a remedy by mandamus to compel the superintendent to give a certificate or to discharge the patient is no reason why the constitutional and more effective remedy of a writ of habeas corpus should be denied.

There are no cases in this state involving the use of the writ of habeas corpus to obtain the release of an inmate of an insane hospital after he has recovered his sanity. But on principle we think there can be no doubt that the remedy exists, and there are cases in other jurisdictions where it has been applied. 21 Cyc. 333; Matter of Dixon, 11 Abb. N. C. (N. Y.) 118; Church, Habeas Corpus, § 382 b, Gardner v. Jones, 126 Cal. 614, 59 Pac. 126.

Our conclusion is that, on the facts found by the trial court, the petitioner should have been discharged from the custody of respondent. The order appealed from is reversed, with directions to so discharge the petitioner.