## STATE EX REL. GEORGE A. SUNDBERG v. DISTRICT COURT OF HENNEPIN COUNTY AND ANOTHER.[1]

February 26, 1932.

Nos. 28,746, 28,754.

[1]Reported in 241 N. W. 39.

*Somsen, Dempsey & Flor, Cobb, Hoke, Benson, Krause & Faegre,* and *L. M. Staples,* for appellant.

*Henry N. Benson,* Attorney General, *Edward J. Goff,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for respondents.

STONE, J.

In May, 1923, in the district court of Hennepin county, the relator, George A. Sundberg, was tried under an indictment charging him with murder in the first degree. He was acquitted "on the ground that at the date of the crime alleged" he was insane, and thereupon committed to the asylum for the criminal insane at St. Peter, "to be there held in custody of said institution until thence discharged by competent authority." In May, 1931, under the statute and on the certificate hereafter dealt with, relator petitioned the district court of Hennepin county for an order discharging him from the hospital at St. Peter, where he has been confined since his commitment. From the order denying that petition relator appeals. His counsel being in doubt as to the correct procedure, a writ of certiorari has also been procured.

The order denying relator's petition was one "affecting a substantial right, made in a special proceeding," and so appealable under G. S. 1923 (2 Mason, 1927) § 9498(7). Hence the writ of certiorari should be and is discharged, the case being properly here on appeal.

■ Before the amendatory act of 1931, hereinafter considered, a person acquitted of crime on the ground of insanity, and so committed to a "state hospital or asylum for safe keeping and treatment," could not be released under the statute "except upon the order of the court committing him" *and* the written certificate of the superintendent of the hospital where he was confined "that, in his opinion, such person is wholly recovered and that no person will be endangered by his discharge." G. S. 1923 (2 Mason, 1927) § 10723 (R. L. 1905, § 5376, as amended by L. 1907, p. 497, c. 358, § 1). By L. 1931, p. 469, c. 364, Mason, 1931 Supp. § 10723, the provisions for a patient's release or discharge were dropped from the statute and others substituted. The first paragraph of the new material is as follows:

"The person so acquitted shall be liberated from such hospital or asylum upon the order of the court committing him thereto, whenever there is presented to said court the certificate in writing of the superintendent of the hospital or asylum where such person is confined, certifying that in the opinion of such superintendent such person is wholly recovered and that no person will be endangered by his discharge."

Then follows a paragraph to the effect that if the superintendent fails or refuses to furnish the requested certificate at the request of the patient the latter may petition the court for his release notwithstanding, and providing that a hearing shall be had on such petition. If the evidence introduced convinces the court that the petitioner has "wholly recovered and that no person will be endangered by his discharge," an order of discharge must follow. The concluding paragraph of the new matter added by the act of 1931 covers cases where the court is not convinced that the petitioner has fully recovered, but it is shown "that no person will be endangered by his release on parole." In that situation, if a "suitable person is willing to take such committed person on parole, and to furnish a home for him and care for and support him, and furnishes a satisfactory bond," the court may order the release of such con-

fined person on parole "for such time and upon such terms and conditions as the court may determine and order."

That is the statutory law of the case. The certificate procured by relator from Dr. George H. Freeman, superintendent of the St. Peter state hospital, under date of May 20, 1931, is in the form required by the statute. It reads as follows:

"I herewith certify that in my opinion George A. Sundberg is wholly recovered and that no person will be endangered by his discharge."

That certificate was confirmed by Dr. Freeman's testimony when he was called as a witness at the hearing below. He reaffirmed his opinion that relator had fully recovered and that no one "would be endangered by his discharge," and went on to say:

"I think when I made that certificate I felt the deep responsibility that I was taking; but I have myself taken this attitude, if there is any case going to be brought into court that I can't conscientiously oppose, I am going to give the required certificate, but if I feel I can conscientiously oppose it in any way whatever on the ground of the man's mental condition, I am going to oppose it just as strongly as I can."

Notwithstanding his strict compliance with the statute and the force of Dr. Freeman's certificate, relator's petition was denied, the ruling being thus explained in the memorandum of the learned trial judge accompanying the order:

"The evidence at the trial of said defendant showed one of the most brutal and deliberate murders in the history of the court. While it is not the desire of this court to keep the defendant confined for a longer period than to us appears to be reasonable and safe, yet this is the first application, and from the report and testimony given by Dr. Freeman his recovery is of rather recent date. The court therefore feels that in justice to society and for its protection the matter should remain in abeyance until such time as the court is fully satisfied that the defendant can be released with

safety. It is for this reason that the petition of defendant at this time is denied."

Relator's status is distinctly not that of a criminal. On the contrary, he is simply a citizen who, having been formally accused of a crime, was as formally acquitted. But he was found to be suffering from mental disease to such an extent that in his own interest and for the safety of the public he was committed to a state institution, not as punishment but rather and only for observation and treatment. He is but a ward of the state, subject to no adverse legal implications except the presumption that his insanity continues until the contrary is shown. 14 R. C. L. 609. So it would be an unconstitutional deprivation of liberty to continue his confinement if he has recovered his sanity. If that has been shown in a legally sufficient manner, he is entitled to discharge as matter of law, on a writ of habeas corpus in the absence of other adequate remedy. Northfoss v. Welch, 116 Minn. 62, 133 N. W. 82, Ann. Cas. 1913A, 1257, annotated, 36 L.R.A.(N.S.) 578. See also subject notes, 1 L.R.A. (N.S.) 540, and 25 Id. 946.

Going now to the provision of the act of 1931 to the effect that the patient "so acquitted shall be liberated" upon the presentation to the court committing him of the required certificate, we think there is no escape from the conclusion that it is mandatory. Nothing is left to judicial discretion. The language of the paragraph makes that rather plain. Were it otherwise uncertain, all doubt would be removed by the language following, in the form of a proviso, requiring a hearing and decision of the court, in the event that the patient is refused the desired certificate, on his petition for discharge. When a statute deals with two such situations and in connection with one not only uses mandatory language but also omits anything to indicate that a hearing is intended, and then as to the other explicitly requires a hearing, there is no room for the view that a hearing is intended in the case first dealt with.

■ We see nothing unconstitutional in the statute as so construed. As already indicated, the beneficiaries of the law are not convicted criminals but rather mere wards of the state, undergoing

confinement in the interest of public safety and as part of the treatment considered necessary for mental illness. The question whether in such a case there has been a recovery is one, in the first instance in any event, for alienists rather than judges. And if in dealing with its wards the legislative authority of the state declares, as it has, that they shall be released when the superintendent of the institution certifies that the patient has recovered and that his release will not endanger the public, that ends the matter. The release of insane patients, other than those who have been "charged with or convicted of some criminal offense," is entirely a matter under our statutes for the board of control and the superintendents of the hospitals for the insane. G. S. 1923 (1 Mason, 1927) § 4524.

If the statute provided for the filing of the certificate with the clerk of the court and required him to enter of record the mere fact of the petitioner's release, it does not occur to us that there would be any legal objection. Doubtless the intention, in addition to making the record, was to bring the fact of the petitioner's certified recovery to the attention of the judge so that the sufficiency and genuineness of the certificate could be made apparent to him. But whatever the thought was, the law cannot be condemned because the judge upon the presentation of the statutory certificate has nothing to do but enter an order discharging the petitioner. The matter is thereby made one of record in the committing court, and it does not offend any constitutional mandate that the legislature has required the judge rather than the clerk to make the record. The duty is ministerial and administrative, but it is one required in the judicial task of administering justice, and so there is no constitutional objection to imposing it on a judge. Some courts have no clerks. Some of our probate courts and all our justices of the peace function without them. Yet part of their judicial work, considered by itself, is ministerial and nothing more. It is not unconstitutional to require the appointment by judges of the subordinate officers and assistants of their courts (State ex rel. Douglas v. Westfall, 85 Minn. 437, 446, 89 N. W. 175, 59 L. R. A. 297, 89 A. S. R. 571) but it is to require their appointment of officers who

have nothing to do with the administration of justice (State ex rel. Young v. Brill, 100 Minn. 499, 111 N. W. 294, 639, 10 Ann. Cas. 425).

■ It is plain that the act of 1931 was intended to and does provide the exclusive statutory procedure for the discharge of patients who have been committed after acquittal of a criminal charge on the ground of insanity. It was enacted for the benefit not only of those subsequently committed, but also for the benefit of similar patients undergoing confinement at the time the act took effect. Upon the latter was imposed no additional burden, and upon that ground the case is plainly distinguishable from Northfoss v. Welch, 116 Minn. 62, 133 N. W. 82, Ann. Cas. 1913A, 1257.

The natural solicitude of any judge for the public safety in these matters is to be commended rather than disapproved. There have been cases where innocent human life has been the penalty for the mistaken release of a person acquitted of crime on the ground of insanity and thereupon committed to a sanitarium. The medical profession, particularly those of its members who have made the study of mental disease a specialty—and outstanding among the latter should be the superintendents of our public hospitals for the care of the insane—are as alive to the danger as we of the legal profession. Whatever our own opinions may be, two compelling facts remain: (1) The patient after he is restored to sanity has a right to liberty, which not even the state can lawfully deny; (2) it is competent for the legislature to say that the certificate of the superintendent of the institution where he has been under treatment shall be sufficient evidence of the fact entitling him to liberty.

All else aside, no evidence was submitted below opposing the certificate of Dr. Freeman. Relator was entitled to his release as matter of law.

The order appealed from must be reversed with directions that relator be forthwith discharged.

So ordered.

OLSEN, J. (concurring in result).

I concur in the result on the ground that a hearing was duly had before the court in this matter, after due notice to the parties, and,

upon such hearing, the uncontradicted evidence was that defendant has wholly recovered his sanity and that no person will be endangered by his discharge. I do not concur in the holding that it is mandatory upon the court to discharge a person committed to a hospital for the insane by the district court, as this defendant was, upon the mere presentation of the certificate of the superintendent of such hospital, mentioned in L. 1931, p. 469, c. 364.

HILTON, J. (concurring).

I concur in the conclusions of Mr. Justice Olsen.

[1]Reported in 241 N. W. 56.