STATE EX REL. DR. JOHN T. ANDERSON
v. UNITED STATES VETERANS HOSPITAL.

128 N. W. (2d) 710.

May 15, 1964—No. 39,102.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *Earl J. Cudd,* Special Assistant Attorney General, *William B. Randall,* County Attorney, and *Paul E. Lindholm,* Assistant County Attorney, for appellant.

*Richard E. Olson,* for respondent.

SHERAN, JUSTICE.

Appeal by the State of Minnesota from an order of the district court dated March 12, 1963, discharging Dr. John T. Anderson from custody of the superintendent of the Veterans Hospital, St. Cloud, Minnesota.

A petition for writ of habeas corpus was filed on behalf of Dr. John T. Anderson with the District Court of Stearns County on January 24, 1963.[1] The petition was verified and supplemented by an affidavit dated March 7, 1963, reading in part as follows: "RICHARD E. OLSON * * * says he is the attorney for Dr. John T. Anderson * * *; that he previously represented Dr. John T. Anderson at a commitment hear-

---

[1]See, Minn. St. 589.02.

ing on November 28, 1962 which was heard in the Probate Court in Ramsey County; * * * that the Court ruled that the hearing was of an informal nature and that the Court was not bound by rules of evidence and that the Court could and would hear any evidence which was presented to it; that the Court received in evidence the report of the examining doctors from Ancker Hospital without said doctors being present and subject to cross-examination; that the Court received in evidence certain writings of the said Dr. John T. Anderson, over the objection of the attorney for Dr. Anderson that he had not previously seen these writings and could not take the time to adequately examine them; that Dr. Anderson's attorney was denied the right to cross-examine the two doctors assisting the Court at the hearing."

In response, an affidavit dated March 11, 1963, was filed by Mr. Paul E. Lindholm, assistant Ramsey County attorney. With respect to the records of Ancker Hospital, he avers: "The Court received these reports into evidence only after receiving the testimony of Miss Phyllis Schwarzbauer, the records librarian at Ancker Hospital, who testified that the records of which counsel speaks in his affidavit were records which were made and kept in the regular course of business at Ancker Hospital, that she was the custodian of these records and that these particular records related to Doctor John T. Anderson." Mr. Lindholm also states in his affidavit that the pleadings received in evidence at the time of the hearing consisted of a part of the files and records in a case entitled John T. Anderson v. William B. Randall, which had been filed with the clerk of District Court of Ramsey County by Dr. Anderson who conceded that "these were his writings." With respect to the claimed denial of cross-examination: "* * * [T]he Probate Court of Ramsey County utilized these two doctors to assist it in its examination of witnesses and the patient to aid the Court in its determination as to the mental condition of the patient. These doctors were not in any way witnesses against Dr. John T. Anderson, and they offered no testimony whatsoever in the hearing which was conducted by the Probate Court of Ramsey County."

After a hearing on the petition for habeas corpus, the district court executed an order dated March 12, 1963, directing that John

T. Anderson be released from detention at the United States Veterans Hospital at St. Cloud.[2] It states:

"* * * Richard E. Olson appeared for the relator and Paul G. Lindholm, assistant county attorney for Ramsey County, appeared asking permission to be heard, and it was then made to appear by the factual statements of counsel[3] that the 'hearing' granted this relator by the probate judge of Ramsey County was an 'informal hearing;' that the examining physicians appointed by said court were not both present at said time and place; that relator's counsel was not permitted to cross examine said physicians; that the court ordered Mr. Lindholm, who appeared as petitioner's attorney under the statute, to go to the office of the clerk of the district court of Ramsey County and bring back certain files and papers in an action brought by this relator wherein he sought to mandamus the Ramsey County attorney in an action involving death in which relator as coroner was seeking to make an investigation; that said papers were procured and referred to by the court in the 'informal hearing' then and there taking place; that the report of examination is set forth under No. 14, '1-9-51 psychotic—depression—symptoms at intervals since that time,' and it was made to appear to this court that relator was denied his constitutional rights; that he was committed by said court to the State Hospital at Hastings, Minnesota, and thence one day later to the United States Veterans Hospital, St. Cloud, Minnesota, where he is now confined.

"Now, THEREFORE, It is ordered that John T. Anderson, relator herein, be immediately released from detention at the United States Veterans Hospital at St. Cloud, Minnesota."

We reverse for these reasons: (1) The petitioner failed to establish that the order of commitment was invalid either (a) because of lack of

---

[2]See, Minn. St. 589.13.

[3]In Willoughby v. Utecht, 223 Minn. 572, 575, 27 N. W. (2d) 779, 781, 171 A. L. R. 535, this court said: "Allegations in a petition for a writ of habeas corpus and the traverse of the return thereto and unsworn statements at the hearing on a writ and in a brief do not constitute proof of facts which they assert. Controverted questions of fact in habeas corpus proceedings must be proved the same as in other legal proceedings."

jurisdiction in the probate court of Ramsey County, or (b) because the statute pursuant to which the probate court acted is unconstitutional and therefore void, or (c) because of failure of the probate court to conform its procedures in this case to the minimal constitutional requirements of due process; (2) the rights of Dr. Anderson can be adequately protected by a petition filed in the court of commitment for restoration to capacity pursuant to Minn. St. 525.78.

█ Although a person committed because of mental illness can test the legality of his confinement by habeas corpus,[4] the scope of inquiry is limited.[5] Possible grounds for habeas corpus urged in this case are: (a) That the committing court acted without jurisdiction over subject matter or person; (b) that the law pursuant to which proceedings were taken is unconstitutional and therefore void; and (c) that the detention constitutes a violation of petitioner's constitutional rights, State and Federal, particularly the right to due process of law as a condition precedent to curtailment of liberty by governmental authority. These claims merit judicial consideration in habeas corpus proceedings.[6]

---

[4]State ex rel. Blaisdell v. Billings, 55 Minn. 467, 57 N. W. 206, 794; Northfoss v. Welch, 116 Minn. 62, 133 N. W. 82; State ex rel. Broberg v. State Bd. of Control, 183 Minn. 345, 236 N. W. 481; State ex rel. Hussman v. Hursh, 253 Minn. 578, 92 N. W. (2d) 673. See, also, 8B Dunnell, Dig. (3 ed.) § 4132(a); 39 C. J. S., Habeas Corpus, § 48; 25 Am. Jur., Habeas Corpus, § 84. Compare, State ex rel. Kelly v. Probate Court, 83 Minn. 58, 85 N. W. 917; State ex rel. Raymond v. Lawrence, 86 Minn. 310, 90 N. W. 769, 58 L. R. A. 931; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198; State ex rel. Sundberg v. District Court, 185 Minn. 396, 241 N. W. 39.

[5]In State ex rel. Blaisdell v. Billings, 55 Minn. 467, 470, 57 N. W. 206, it was stated that a judicial officer in considering a petition for habeas corpus "can exercise no appellate jurisdiction, nor consider any errors or irregularities in the proceedings, judgment, or process of any competent court having jurisdiction. He can only inquire whether the judgment or process complained of is invalid because without or in excess of jurisdiction."

[6]See, State ex rel. Hussman v. Hursh, *supra.* For a recent decision of the United States Supreme Court relating to the role of the writ of habeas

■ In this case it appears from a certified copy of the warrant of commitment that the warrant, issued by the probate judge of Ramsey County, November 28, 1962, and directed to the sheriff of that county, the superintendent of the State Hospital at Hastings, Minnesota, and the Veterans Administration, reads as follows:

"The above named patient having been found to be mentally ill * * * the said sheriff is commanded to convey and deliver such patient forthwith to the said superintendent and the said superintendent is commanded to receive and detain said patient in the said hospital according to law."[7]

The fact that the probate court has jurisdiction over commitment proceedings by virtue of our constitution has long been established.[8]

---

corpus in protecting constitutional rights, see Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837. See, also, Annotation, 21 A. L. R. (2d) 1004.

[7]Minn. St. 525.753, subd. 1, provides in part: "If the patient is found to be mentally ill, * * * the court shall make a finding that commitment to an institution for the care of mentally ill * * * is necessary for the welfare and protection of the patient or society. * * * The court shall issue to the sheriff, or any other person, a warrant, in duplicate, committing the patient to the custody of the superintendent of the proper state hospital, * * *. If the patient is entitled to care by the veterans administration or other agency of the United States in this state, the warrant shall be in triplicate, committing the patient to the joint custody of the superintendents of the proper state institutions and veterans administration or other federal agency. * * *

* * * * *

"The chief officer of any facility of the veterans administration or institution operated by any other agency of the United States to which the person is so committed shall with respect to such person be vested with the same powers as superintendents of state hospitals for mental diseases within this state with respect to retention of custody, transfer, parole, or discharge." The record shows that petitioner was received at the State Hospital at Hastings on November 28 and transferred to the Veterans Hospital at St. Cloud the next day.

[8]Minn. Const. art. 6, § 6, gives the probate court "unlimited original jurisdiction * * * for * * * all guardianship and incompetency proceedings." This section, amended November 6, 1956, is in accord with the

It is undisputed that John T. Anderson and his attorney were present at the time of the hearing which preceded the finding of mental illness.[9] The warrant of commitment recites a finding of mental illness.[10] There is nothing in the conflicting affidavits presented in behalf of John T. Anderson by his attorney and in behalf of the state by the as-

---

cases interpreting the former art. 6, § 7, which contained a less clear grant of authority. In re Adoption of Zavasky, 241 Minn. 447, 63 N. W. (2d) 573; In re Guardianship of Strom, 205 Minn. 399, 286 N. W. 245; State ex rel. Chesley v. Wilcox, 24 Minn. 143.

[9]"In State ex rel. Degen v. Freeman, 168 Minn. 374, 375, 210 N. W. 14, involving a guardianship proceeding, this court correctly observed: " '* * * The filing of a proper petition gives it [the probate court] jurisdiction of the subject matter of the prticular case, *and by service of a warrant or process, or by his voluntary appearance, it acquires jurisdiction of the person.*' (Italics supplied.) Obviously, in the absence of a voluntary submission to the jurisdiction of the court (as in Scott v. Whitely, 168 Minn. 74, 209 N. W. 640), the filing of a proper petition in guardianship proceedings to have a person adjudicated an incompetent does not of itself confer jurisdiction over the person of the alleged incompetent, and, in order to confer such jurisdiction and as a prerequisite to a valid adjudication, an adequate notice, conforming to the constitutional requirements of due process of law, must be served upon the alleged incompetent advising him of the time and place of the hearing and affording him an opportunity to be present to contest the proceedings." Jasperson v. Jacobson, 224 Minn. 76, 82, 27 N. W. (2d) 788, 793.

[10]"* * * [T]he probate court is a court of record, and of general jurisdiction over certain subjects, among which is the subject of guardianship of insane persons. The record of such a court in such a guardianship matter does not impeach itself by its own silence. * * * The want of jurisdiction must affirmatively appear.

\* \* \* \* \*

"* * * It does not affirmatively appear by the record that the relator was not present in court during the proceedings, and therefore the judgment of the probate court cannot be impeached collaterally for the want of jurisdiction. McNamara v. Casserly, 61 Minn. 340, 63 N. W. 880; Davis v. Hudson, 29 Minn. 27, 11 N. W. 136. If in fact there was no jurisdiction, the remedy is by a direct proceeding to set aside the judgment." State ex rel. Kelly v. Kilbourne, 68 Minn. 320, 322, 71 N. W. 396, 397.

sistant county attorney of Ramsey County upon which a finding of the absence of jurisdiction over the person can be based.[11]

■ It cannot be claimed that the statutes relating to the commitment of the mentally ill, senile, inebriate, mentally deficient, or epileptic, Minn. St. 525.749 to 525.79, are wholly void.[12] Relator contends, however, that the proceedings in this case involved a finding of mental illness, and that the definition in § 525.749, subd. 3, of a "mentally ill person" as "any person of unsound mind and in need of treatment, control or care" is so vague and indefinite as to make the provisions of the law relating to mentally ill persons unconstitutional. In our judgment, the words have a meaning generally adequate, and we are not prepared to find the statutes unconstitutional on this ground in habeas corpus proceedings.[13] The record before us is not adequate to permit an analysis of the application of the definition to the situation of Dr. Anderson and the consequent effect on his constitutional rights.[14]

■ We cannot tell from the affidavits filed in support of and in

---

[11]See, State ex rel. May v. Swenson, 242 Minn. 570, 65 N. W. (2d) 657.

[12]For a discussion of the constitutionality of L. 1893, c. 5, enacted to supersede the commitment statutes previously in force, see State ex rel. Blaisdell v. Billings, *supra.*

[13]See, State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297, affirmed, 309 U. S. 270, 60 S. Ct. 523, 84 L. ed. 744, 126 A. L. R. 530; Whitmore, *Comments on a Draft Act for the Hospitalization of the Mentally Ill,* 19 Geo. Wash. L. Rev. 512, 521; Ross, *Commitment of the Mentally Ill: Problems of Law and Policy,* 57 Mich. L. Rev. 945, 949. Comparable definitions have been used in New York and California. See, 34A McKinney's Consol. Laws of New York, Mental Hygiene Law, § 2; Danna v. State, 207 Misc. 505, 139 N. Y. S. (2d) 585; Matter of Coates, 9 N. Y. (2d) 242, 213 N. Y. S. (2d) 74, appeal dismissed, 368 U. S. 34, 82 S. Ct. 147, 7 L. ed. (2d) 91; Welfare and Institutions Code of California, § 5040; Campbell v. People, 190 Cal. App. (2d) 253, 12 Cal. Rptr. 60; Public Health Service Publication No. 51, A Draft Act Governing Hospitalization of the Mentally Ill (Rev. 1952) §§ 1(a) and 9.

[14]In general, courts have been reluctant to void legislative enactments relating to commitment proceedings upon application for discharge by a person said to be insane or mentally ill. See, Note, 44 L. R. A. (N.S.) 389.

opposition to the petition whether the minimal requirements of due process were observed.[15] While there is not statutory or constitutional right to a jury trial in proceedings of this type,[16] the person with respect to whom a petition for commitment is filed is entitled to reasonable notice and an opportunity to be heard[17] to the extent circumstances permit.[18] The right to be heard may include the right to be represented

---

[15]"* * * [I]t is the burden of a relator to prove the facts which in his application he asserts invalidate the court's sentence since bald assertions, without more, are insufficient to overcome the presumption of regularity which attaches to a judgment of the court." State ex rel. May v. Swenson, 242 Minn. 570, 573, 65 N. W. (2d) 657, 660.

"* * * The probate courts of this state within the sphere of action committed to them are superior courts to whose judgments the usual presumptions attach. If want of jurisdiction does not appear affirmatively their judgments cannot be attacked collaterally." State ex rel. Degen v. Freeman, 168 Minn. 374, 375, 210 N. W. 14.

[16]"* * * Placing persons under guardianship or releasing therefrom is within the original jurisdiction of probate courts, courts not equipped with jurors, and as to which the constitutional guaranty of trial by jury does not apply. Nor is the question of guardianship triable by jury as a matter of right, either in probate or district courts." Vinstad v. State Bd. of Control, 169 Minn. 264, 266, 211 N. W. 12, 13. See, Annotation, 33 A. L. R. (2d) 1145.

[17]See, State ex rel. Hussman v. Hursh, *supra*.

[18]"Notice in commitment proceedings is not always practicable where the person sought to be committed is violently and dangerously insane. But those types of insanity or feeble-mindedness which manifest themselves in harmless symptoms lend themselves to the orderly processes of a formal hearing and adjudication; and in such cases the constitutional mandates must be strictly observed by giving the person under inquiry not only adequate notice of the fact of a hearing and the purpose thereof, but also every opportunity to be heard before the order of commitment is issued." In re Restoration to Capacity of Masters, 216 Minn. 553, 556, 13 N. W. (2d) 487, 489. For a general discussion of the problem, see: *Analysis of Legal and Medical Considerations in Commitment of the Mentally Ill*, 56 Yale L. J. 1178; Guttmacher and Weihofen, Psychiatry and the Law, c. 13; Weihofen and Overholser, *Commitment of the Mentally Ill*, 24 Tex. L. Rev. 307; Slovenko and Super, *The Mentally Disabled, the Law, and the Report to the American Bar Foundation*, 47 Va. L. Rev. 1366; Cochran, *Insane Persons—Involuntary Commitment Procedures—Due Process*, 41

by counsel; the right to cross-examine all witnesses for the state; and the right to present evidence in opposition to the petition.[19] We cannot tell from the affidavits which have been filed whether the procedure followed in this instance was adequate. The mere fact that hospital records were received in evidence,[20] or that statements appearing in pleadings were considered,[21] or that Dr. Anderson's attorney was not permitted to cross-examine the doctors of medicine who assisted in the examination,[22] cannot justify discharge of these proceedings.

---

N. C. L. Rev. 141; Kutner, *The Illusion of Due Process in Commitment Proceedings,* 57 Nw. L. Rev. 383; U. S. Public Health Service Publication No. 51, A Draft Act Governing Hospitalization of the Mentally Ill (Rev. 1952); Kittrie, *Justice for the Mentally Ill,* 41 J. Am. Jud. Soc. 46; Szasz, *Psychiatry, Ethics, and the Criminal Law,* 58 Col. L. Rev. 183. See, also, 1 Baylor L. Rev. 248; 13 Rocky Mt. L. Rev. 99; 3 Stanford L. Rev. 109. See, Annotation, 92 A. L. R. (2d) 570.

[19] Minn. St. 525.751, subd. 4. "Due process of law requires an orderly proceeding *adapted to the nature of the case,* in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights." (Italics supplied.) State ex rel. Blaisdell v. Billings, 55 Minn. 467, 474, 57 N. W. 206, 794, 795.

[20] See, Roeder v. North American Life Ins. Co. 259 Minn. 168, 106 N. W. (2d) 624.

[21] See, Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744.

[22] Minn. St. 525.752 provides in part: "Subdivision 1. The patient shall be examined at such time and place and upon notice to the patient and to such other persons and served in such manner as the court determines. The court shall appoint two licensed doctors of medicine, and in addition thereto may appoint one person skilled in the ascertainment of mental deficiency, to assist in the examination. * * *

* * * * *

"Subd. 3. The examiners and the court shall report their findings. One copy thereof shall be filed in the court and another copy thereof shall be transmitted to the superintendent * * *."

"We have no desire to change the rule that proceedings of this nature are not adversary in nature, that they are conducted by the state in its character of *parens patriae,* and that 'the manner and method of determining the facts, when jurisdiction has once vested in the court as required by law, rests in its sound judgment and discretion, controlled of course by the general rules of judicial procedure.' " In re Restoration to Capacity

■ If no other adequate remedy was available, the case could be remanded to the district court to take evidence in an effort to resolve the conflicts appearing in the affidavits on file and more fully to explore the petitioner's claim of illegal confinement.[23] If an appeal had been taken from the order of commitment pursuant to § 525.79,[24] within the time fixed by § 525.712,[25] there would have been no need to resort to habeas corpus to test the legality of the commitment. In some situations failure to appeal is a bar to habeas corpus relief,[26] and it is difficult to understand why the time to appeal was permitted to elapse in this case when the petitioner was represented by the same attorney at the commitment proceedings as he now is in this effort to secure discharge through habeas corpus.[27] Circumstances unique in

of Masters, 216 Minn. 553, 560, 13 N. W. (2d) 487, 491, 158 A. L. R. 1210.

[23]See, State ex rel. McGuire v. Tahash, 260 Minn. 334, 109 N. W. (2d) 762; L. 1961, c. 660.

[24]Minn. St. 525.79 provides in part: "Any person aggrieved, * * * may appeal to the district court in the manner prescribed by sections 525.71 to 525.74. * * * The district court shall give the appeal preference over every other proceeding therein, and hear the matter de novo, *without a jury,* and in a summary manner." (Italics supplied.) In view of the language of the statute adopted in 1947 (L. 1947, c. 622, § 13) it appears that the legislature intended that an order of commitment made pursuant to §§ 525.749 to 525.79 should be appealable. The doubt on this point expressed in State ex rel. Wendland v. Probate Court, 221 Minn. 333, 22 N. W. (2d) 448, does not deter us in arriving at this conclusion. The state acknowledges the existence of the right to appeal in its brief, and we notice an opinion of the attorney general, No. 346-h, June 16, 1961, advising that an appeal from an order of the probate court committing a person to a state hospital for treatment can be taken to the district court pursuant to this section.

[25]Minn. St. 525.712 provides in part: "Such appeal may be taken by any person aggrieved within 30 days after service of notice of the filing of the order, judgment, or decree appealed from, or if no such notice be served, within six months after the filing of such order, judgment, or decree. To render the appeal effective (1), the appellant shall serve a notice of appeal * * *."

[26]See, Willoughby v. Utecht, *supra.*

[27]"* * * Whether relator had a right of appeal or was limited to a

this type of case may explain the failure to appeal, however, and we do not take a technical approach to claims of illegal confinement.

A solution to the problem is suggested by State ex rel. Raymond v. Lawrence, 86 Minn. 310, 312, 90 N. W. 769, 770, in which the court said:

"Where an attempt is made by a guardian or by anybody else to exercise any restraint over the person of any one within this state, the writ of habeas corpus, *or any other appropriate remedy*, will always be effectual to inquire into the propriety of any such attempted restraint, and *upon such inquiry the proper court can make such an order or judgment as the particular case may require.* Townsend v. Kendall [4 Minn. 315 (412)]." (Italics supplied.)

Acting on this principle, it reversed an order in effect granting discharge from guardianship but went on to outline the procedure to be followed in the probate court having jurisdiction over the guardianship with respect to the claimed abuse of liberty involved in that case. This brings us to Minn. St. 525.78, which provides:

"Subdivision 1. Any reputable person or the commissioner may petition the court of commitment, * * * *for the restoration to capacity of a patient.* * * *

"Subd. 2. Upon the filing of a petition * * * the court shall fix the time and place for the hearing thereof, ten days notice of which shall be given to the commissioner and to the county attorney and to such other persons and in such manner as the court directs. Any person may oppose such restoration. Upon proof that the patient is not mentally ill, senile, inebriate, mentally deficient, or epileptic the court shall order him restored to capacity at the expiration of 30 days from

review by certiorari or writ of error, we need not here decide. After judgment was entered, he made no effort to seek a review of the proceeding, either by appeal, writ of certiorari, or writ of error. His remedy was by way of review of the judicial errors claimed, rather than by a motion of this kind [for dismissal of the proceeding for commitment] after the time for review had expired." State ex rel. Wendland v. Probate Court, 221 Minn. 333, 337, 22 N. W. (2d) 448, 450.

the date of such order. The copy of said order shall be mailed to the superintendent of the state hospital or institution where said patient was last confined." (Italics supplied.)

It was determined by In re Wretlind, 225 Minn. 554, 32 N. W. (2d) 161, that the original order of commitment can be attacked in proceedings for restoration instituted under this section. There, the petitioner asserted that the probate court had no jurisdiction to order the commitment because no verified petition for commitment had been filed; no notice of hearing was served upon petitioner as required by the statutes; and a personal appearance at the time of the hearing was made under circumstances negativing waiver of the right to notice. The state denied the right of petitioner to contest the jurisdiction of the probate court, contending that the proceeding, being one for restoration to capacity, assumed the validity of the original order and could not be used as a basis for an attack on the original jurisdiction of the probate court. The judgment of the district court affirming the order of the probate court denying the petition for restoration was reversed, it being held, in effect, that a petition for restoration is an effectual device for attacking the order of commitment.

The proper forum for a hearing on an attack on the order of commitment here is the probate court of Ramsey County. The mechanics to be followed in bringing this about require consideration. Dr. Anderson has been at liberty for approximately a year. We assume he is not presently dangerous either to the public or himself. If we reverse the order of discharge entered by the trial court and do not direct a stay, the responsible officials will have the duty of establishing physical custody of him. It is better, we believe, to maintain the status quo until the probate court has had opportunity to consider a petition for restoration. Such a petition may be based on the ground that the initial commitment was not proper, or that Dr. Anderson's mental condition as of the time the petition for restoration is filed warrants restoration even though the commitment on November 28, 1962, was proper. It is not intended by this opinion to limit the scope of the inquiry.

We conclude that it is within our authority and advisable to re-

mand this matter to the probate court of Ramsey County directing that it:

(1) Appoint a guardian ad litem for the petitioner who will, upon appointment, file a petition for restoration to capacity upon such grounds as may appear justified.[28]

(2) When the petition is filed, direct that a hearing be held on a day certain and provide that all interested persons be notified.

(3) Make timely inquiry as to whether Dr. Anderson will be represented by an attorney of his own selection at the hearing and if not, make provision for such representation pursuant to the applicable statute.[29] At the hearing the attorney appearing for Dr. Anderson will be afforded full opportunity to present evidence and to cross-examine any witnesses whose testimony is taken to support commitment. It is assumed that at such hearing there will be a full development of the facts relating to whether the procedures of the probate court at the time of the initial hearing were consistent with the minimal requirements of due process and whether, apart from this, Dr. Anderson should now be released.[30]

The order of discharge made and entered by the District Court of Stearns County will remain in effect until the probate court of Ramsey County has made and entered its decision at the conclusion of the contemplated hearing. If Dr. Anderson is released by virtue of the contemplated order of the probate court of Ramsey County, the order of

---

[28]It is proper for the probate court to appoint a guardian ad litem in a proceeding of this nature, as an essential factor in the defense of the committed person's interests. In re Wretlind, 225 Minn. 554, 32 N. W. (2d) 161; Minn. Const. art. 6, § 6; Minn. St. 525.54 and 525.56, subd. 3(3).

[29]Minn. St. 525.751, subd. 4, provides: "* * * If the patient so requests, or is held for observation under order of the court, the court shall appoint counsel for him, if he is financially unable to obtain counsel. *In all other cases the court may appoint counsel for the patient if it determines the interests of the patient requires counsel.*" (Italics supplied.) See, Annotation, 87 A. L. R. (2d) 950.

[30]See, In re Guardianship of Strom, 205 Minn. 399, 286 N. W. 245; In re Restoration to Capacity of Masters, 216 Minn. 553, 13 N. W. (2d) 487.

discharge will not be significant. If he is not released by order of the probate court of Ramsey County, the decision of this court reversing the order of discharge will become effective so as to establish the right and duty of the proper officials acting for the Veterans Administration to assert custody of the petitioner. The right of any person aggrieved to appeal from the contemplated order of the probate court of Ramsey County will be unaffected by this decision.

A motion has been filed in this court by the state for an order directing that Dr. Anderson be returned to the custody of the superintendent of the Veterans Hospital. If the state files in this court a certificate of the clerk of the probate court of Ramsey County, made after a lapse of 30 days from the date of this opinion, declaring that a petition for restoration has not been filed in that court, an order granting such motion will be entered; otherwise the motion is denied.

The clerk of this court will mail a copy of this opinion to the clerk of the probate court of Ramsey County for its information and guidance.

Remanded with directions.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.