FRED DANNA, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 31713.)

Court of Claims, March 21, 1955.

*Vincent J. Gallo* and *Harry H. Lipsig* for claimant.

*Nathaniel L. Goldstein, Attorney-General (David Marcus* of counsel), for defendant.

MAJOR, J. . This claim was filed to recover damages for personal injuries sustained by the claimant as a result of an accident at Brooklyn State Hospital. Pursuant to an order of Honorable MEIER STEINBRINK, Justice of the Supreme Court, made on September 25, 1950, based upon the certificate of a qualified physician certifying that the claimant was mentally disturbed and pursuant to the provisions of the Mental Hygiene Law, the claimant was committed to the Brooklyn State Hospital for a period of thirty days. This order further provided, in substance, that if within said thirty-day period, the director or the physician in charge, or the designated medical officer of the institution to which the patient was committed finds that the patient is in need of continued care and treatment, a certificate setting forth his findings be filed in the office of the County Clerk, then the order would become a final order and such patient shall thereafter remain in such institution, or any other institution to which he may be transferred, until his discharge. (Mental Hygiene Law, § 74, subd. 7.)

On October 9, 1950, the physician in charge certified in writing, in pursuance to the aforesaid court order, that. the claimant needed continued hospital care and treatment, and caused the same to be filed in the County Clerk's Office.

On July 11, 1951, claimant was released to his sister on a " convalescent status " for a period of one year. However, before the expiration of such period and on December 10, 1951, because of claimant's condition, he was readmitted to the hos-

pital. He remained there until May 7, 1952, when he was again released to his sister's custody.

The accident involved herein occurred on November 25, 1950. This claim was filed on January 30, 1953, a period of two years, two months and five days after the accident. No notice of intention to file a claim was filed. No such notice is necessary if the claimant was under disability (Court of Claims Act, § 10, subd. 5). It is required only that the claim be filed within two years after such disability is removed.

Subdivision 8 of section 2 of the Mental Hygiene Law provides '' A ' mentally ill person ' means any person afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment ''. The term '' ' mentally ill ' '', therefore, has equal significance with the term '' ' insane ' ''. (Mental Hygiene Law, § 2, subd. 15.)

Although the claimant has never been adjudicated incompetent and no committee of his person or property has ever been appointed in any proceeding under section 1356 or other pertinent sections of the Civil Practice Act, the order of commitment herein made by Justice STEINBRINK was a '' judicial determination '' of claimant's condition as of the time it was made and constituted him to be a ward of the State of New York. (*Sporza* v. *German Sav. Bank,* 192 N. Y. 8; *Lee* v. *State of New York,* 187 Misc. 268.)

The burden of proving legal disability is on the claimant. The State having presented no proof to the contrary, the claimant's confinement on a commitment to Brooklyn State Hospital by an order of the Supreme Court as hereinabove stated, must be accepted as evidence of legal disability during the period of his confinement. Therefore, the claimant herein was under a legal disability within the meaning of subdivision 5 of section 10 of the Court of Claims Act, at the time of the accrual of his claim, and he was at that time and up to the time of his final discharge from the hospital, incompetent to manage himself and his affairs because of his mental condition. (*Lee* v. *State of New York, supra.*)

The court must accept the release of the claimant as the judgment of the director and supervising physicians of the hospital that the claimant had returned to normalcy and was able to manage his own affairs; therefore, obviating the necessity for the appointment of a guardian ad litem for the purpose of filing and pursuing this claim. This claim having been filed within two years from the date of the final release of the claimant

herein, the motion of the State to dismiss the claim for untimely filing and for failure to prosecute the same by a guardian ad litem is denied.

On November 25, 1950, between 9:30 and 10:30 A.M., the claimant was an inmate of Brooklyn State Hospital, an institution for the mentally ill, owned and operated by the State of New York. Sometime during the previous night, a tree about forty-five feet tall and fifteen to twenty inches in diameter, was blown down by a high wind and fell across a fence of the hospital on Clarkson Avenue at a point in front of the nurses' home. This fence extended east and west and was about eight feet high. It consisted of several sections firmly bolted together to horizontal bars at the top and bottom, each section contained thirty to thirty-five pickets, four or five inches apart. Each picket had a pointed top about two inches long. About twenty feet west from where the tree trunk fell on the fence, the fence was connected and fastened to a brick post or pier on the east side of the nurses' home entrance. This post or pier was about two feet square and the same height as the fence. There was a heavy metal gate attached to the brick post. A hedge about six feet high and three feet wide extended westerly from the gate post, parallel with the outside fence and about two feet from it.

The tree rested across the top of the fence at about a forty-five degree angle at a point about twenty feet east of the gate post. About thirty feet of the tree hung over the fence onto the hospital premises, and fifteen feet remained outside, with some of the roots still embedded in the earth. The impact of the fallen tree bent the top horizontal bar downward and embedded three or four pickets in its trunk.

Complying with orders from his superior, at about 8:30 A.M., James McGillic, the grounds supervisor, contacted Michael Francis Ryan, a truck operator, and directed him to bring his crew of patients to help remove the fallen tree. After gathering eight or ten inmates from wards one and two, Ryan and McGillic, with the inmates, proceeded to the scene. The claimant was in this group. McGillic and Ryan used saws and axes to trim and prune the limbs and branches off the tree and to cut off its top. The inmates carried away the cut branches and, after completing this task, they were standing around in different places to watch the tree trunk being removed from the top of the fence.

The tree was first freed from its roots; then a chain was placed around the trunk of the tree about twelve to fourteen feet from the bottom thereof with a rolling hitch, so that the draw would come from the back thereby causing the tree trunk to roll,

and in this manner free itself from the pickets embedded therein. The other end of the chain was attached to the rear end of the frame of a one and one-half ton Chevrolet truck which was backed up to the tree about ten feet west from the lower end of the trunk, and about ten to fifteen feet south thereof. The body of the truck was about parallel to the trunk of the tree. Mr. Ryan drove the truck forward, slowly tightening the chain and moving the tree, which was brought to the ground.

During this moving process, neither Mr. McGillic nor Mr. Ryan could see the claimant or other patients. There were no other persons supervising the inmates engaged on this project. Mr. McGillic was giving instructions to Mr. Ryan, and Mr. Ryan was busy driving the truck, watching Mr. McGillic's operations and listening to his instructions. About the time the tree reached the ground, Mr. McGillic and Mr. Ryan heard someone holler and, upon investigation, found the claimant on the ground with the gate and brick post above described on top of his legs and lower extremities. The fall of the tree upon the fence and the manner in which the tree trunk was removed from it caused the brick pier or post with the gate attached, to become loose from its foundation and fall to the ground and upon the claimant herein.

As a result of this accident, claimant sustained a fracture of the left femur which resulted in a slight shortening of the left leg; fracture of left patella healed with no loss of motion; fractures of the transverse processes of the bodies of the first, second and third lumbar vertebrae with resultant relative injuries; fracture of the right sixth rib; laceration of the nose causing a permanent scar; and other miscellaneous injuries and bruises, with considerable pain and suffering. The evidence does not justify a finding that the claimant suffered any serious concussion or pin-point hemorrhages of the brain, or that all of his present complaints and ailments are due to this accident. He still has some permanent impairment in his leg and back, but an overall appraisal shows a very satisfactory recovery.

At the time of the accident, the claimant had a life expectancy of twenty-six and seventy-two one hundredths years. He has worked at various jobs before and after the accident — usually spotty and of limited duration. His earning capacity has been reduced as a result of the injuries sustained.

In the operation of its hospitals, the State is responsible for hazards reasonably to be foreseen and risks reasonably to be perceived. (*Flaherty* v. *State of New York,* 296 N. Y. 342.)

The removal of this large tree from the pickets and fence was a hazardous and dangerous task, which required skill, care and caution. The protection of the hospital patients employed on this project was a paramount duty of the hospital officials. The claimant was allowed to shift for himself after the removal of the tree branches was completed, and was not seen by either of the two hospital employees, McGillic and Ryan, in charge, from the time the chain was attached to the tree until after the accident. The employees in charge knew that the patients used on the project were mentally ill and yet no one remained near them for the purpose of keeping them back from the danger. The claimant herein was present at the scene by direction and not by choice. The two employees were needed to remove the tree, and in the exercise of reasonable care, another attendant should have supervised the patients at the time.

The method used to remove the tree was not safe, proper or an approved standard method to accomplish the result. No warnings were given or barriers erected. No inspection or examination was made of the fence to ascertain the potential danger. Two employees were not sufficient to remove the tree and watch the patients. The employees in charge failed to protect the claimant as prudent men should under similar circumstances.

Under the circumstances above outlined, the court finds the State of New York guilty of negligence, and that the claimant is free from contributory negligence.

The claimant is entitled to an award against the State of New York in the sum of $18,000, for his permanent and temporary injuries, pain and suffering, loss of earning power, and all other damages sustained in the aforesaid accident.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.